## FIRST BAPTIST CHURCH OF TRINITY HEIGHTS et al. v. DENNIS et al.

### No. 10093.

Court of Civil Appeals of Texas.
Austin.

Dec. 10, 1952.

William R. Herring and James H. Martin, Dallas, for appellants.

Johannes & Kelsoe, G. H. Kelsoe, Jr., Dallas, for appellees.

HUGHES, Justice.

This dispute is between majority and minority groups of the First Baptist Church of Trinity Heights of Dallas. The minority group contains about fifteen members out of a total church membership of approximately four hundred.

The suit was brought by the minority group in the name of the church[1] against its pastor, the Reverend J. Calvin Dennis, and other officers of the church.

The primary purpose of the suit was to have vested in appellants the possession of all church property, real and personal, to be used and employed by them in accordance with the terms of a certain deed from H. H. Moore and wife, Emma Moore, to the church, dated April 20, 1923, conveying the land upon which the church property is now located.

The Moore deed contained these provisions:

"Should any question of division in denominational principal or fact ever arise in said church, then all authority

---

1. The judgment herein sustained appellees' plea in abatement denying appellants' right to sue in the name of the church.

pertaining to the rights and title to said property, together with all improvements and appurtenances thereto, with all furniture, furnishings or other equipment used in connection therewith, shall inhere and vest exclusively in that part of said church holding to the principles now governing said church and as expressed in the present Constitution of the Baptist Missionary Association of Texas.

"In the event there should cease to be any member or members of said church holding to the principles and doctrines, as expressed in the constitution of the Baptist Missionary Association of Texas, all right and titles to said property and appurtenances thereto, with all furniture, furnishings and other equipment used in connection therewith, shall immediately vest in the Corresponding Secretary of the Baptist Missionary Association of Texas, in trust for and subject to the orders of said Association."

█ It was the pleading of appellants that they and those for whom they acted constituted that part of the church holding to the principles of the church as expressed in the 1922 Constitution of the Baptist Missionary Association of Texas and that the majority of the membership of such church, including the pastor and many of its officers, had deviated therefrom and had thus lost the right to control the church property. Specifically appellants alleged the following violations of the terms of the Moore deed and the 1922 Constitution:

"(a) The said defendants are threatening and attempting to encumber the said property with the express purposes of then permitting a foreclosure and buy in said property to extinguish and defeat the restrictive clauses in said deed.

"(b) Defendants in the study courses of the church during the year 1950 refused to use the Baptist Missionary Association of Texas literature but on the contrary used the literature of the Southern Baptist Convention.

"(c) Said defendants in 1950 refused to send messengers to the Dallas County Baptist Missionary Association.

"(d) The said defendants during the year 1950 refused to send messengers to the Baptist Missionary Association in the meeting in Port Arthur, Texas.

"(e) That the defendants so manipulated to control the conference meeting in said church on the date of April 4, 1951, to defeat a conference resolution made by Mrs. B. D. Veach, said resolution calling upon the church to reaffirm its loyalty to the Association and North American Baptist Association and to affiliate with them in the different phases of work."

After hearing considerable evidence the court submitted this issue to the jury:

"Special Issue No. I

"Do you find from a preponderance of the evidence that the division existing among the members of the First Baptist Church of Trinity Heights exists on account of differences in denominational principle or fact?"

This issue was answered "No."

Two other issues were submitted to the jury conditioned on an affirmative answer to the above issue and were not answered. By a fourth special issue the jury found that appellants and their class had waived their rights in the church property.

We are of the opinion that the answer of the jury to the issue quoted above is amply supported by the evidence and that such issue is decisive of this appeal.

We are also of the opinion that the evidence is undisputed that there was no division among the congregation of the First Baptist Church of Trinity Heights as to any "denominational principal (principle) or fact * * *" as expressed in the present (1922) Constitution of the Baptist Missionary Association of Texas, this being the language of the restrictive covenant in the Moore deed.

These conclusions bring into focus appellants' last two points, being numbers six and seven. They relate to Special Issue

No. I and the accompanying definition of "Denominational principle." The court defined this term as meaning "a fundamental truth of a religious creed or sect."

Appellants objected to this definition on the grounds that it was

"* * * too narrow with reference to the issues in this cause, and same is likewise a comment upon the weight of the evidence and does not take into consideration matters pertaining to organization and church government as distinguished from fundamental faith and practice of the denomination."

To submission of the issue itself appellants objected on the ground that there was no evidence of any dispute as denominational principles and that the proper issue to submit was

"Do you find from a preponderance of the evidence that the division existing among the members of the First Baptist Church of Trinity Heights exists on account of difference of fact, * * *."

Appellants in their brief make this statement under these points:

"The Statement of Facts in this case contains 478 pages and in all those pages there is not one word of testimony showing that there was any difference between plaintiffs and defendants in regard to fundamental truths of the Baptist denomination. Plaintiffs and defendants alike were, and so far as the writer of this brief has reason to believe, still are good Baptists; that question or issue simply was not in the case."

We must ascertain if we can what the grantors in the Moore deed had in mind when they wrote the restrictive covenant in their deed. This must be garnered from the language used and the instrument to which they referred, the Constitution of the Baptist Missionary Association of Texas.

■ While the Moore deed in the first portion of the paragraph copied herein uses the phrase "denominational principle or fact" we find that the word "fact" is omitted in the latter portion which vests the property in those "holding to the principles" of the church as expressed in the Baptist Missionary Association Constitution. Then too in the succeeding paragraph of such deed provision is made for vesting the church property in the event no member of the church continues faithful to the "principles and doctrines" contained in the Baptist Missionary Association Constitution.

It is clear to us that the Moores made no distinction between a "denominational principle" and an "denominational fact" and that each phrase referred only to the fundamental tenets of Baptist Missionary Association of Texas as expressed in its Constitution and not to routine provisions relating to organization, procedure and other incidental matters.

We find the following general principles enumerated in the Baptist Missionary Association Constitution of 1922:

"Article II—Object.

"The object of this Association shall be to awaken a deeper interest in the welfare of the denomination, to cultivate a closer union among the churches, and to endeavor to produce and perpetuate the very greatest possible activity as to missionary and educational enterprises and as to the widest scope of denominational benevolence.

* * * * * *

"Article V—Principles of This Body * * *.

"This Association shall recognize the freedom of speech as essential to the highest achievements in its work. It shall stand or fall on its own conformity to truth. It shall exercise no ecclesiastical authority, but it shall by every precaution, recognize the sovereignty of every individual Church. It shall also encourage on the part of the Church and the Messengers the greatest possible freedom of expression in discussing matters pertaining to its work."

■ In our opinion none of the specific charges made by appellants in their pleading and which we have copied accuse appellees or any other member of the church

of violating any doctrine or principle of the Baptist Missionary Association Constitution. Furthermore, appellants in their brief have neither recited nor referred us to any evidence, other than that relating to the sending of messengers to the Baptist Missionary Association meetings which we will later discuss, upon which any such defections could be based and in reading the entire statement of facts we have found none.

For the reasons stated we overrule Points Six and Seven.

Appellants' first point the discussion of which consumes more than one-third of their brief reads in full:

"The Baptist Missionary Association of Texas, under its Constitution, was the sole and exclusive judge of its own membership, and the action of the County Meeting of the Dallas County Baptist Missionary Association of Texas in September, 1951, and the action of the Baptist Missionary Association of Texas, at its Annual Session in Lubbock, Texas, in November, 1951, in recognizing plaintiffs and in seating their messengers as the messengers of the First Baptist Church of Trinity Heights was conclusive and binding on all parties and on the court, and the court and jury were without power to disregard or set aside this official action of the Association. Therefore, plaintiffs' Motion for Instructed Verdict and for Judgment non obstante veredicto should have been granted, and it was reversible error when the court overruled same."

We adopt the following portion of appellants' statement under Point One:

"The First Baptist Church of Trinity Heights is an independent local baptist church and, as are practically all other baptist churches, it is congregational in its form of government. Denominationally speaking, while baptist churches are independent and congregational in their form of government, nevertheless a great many of them are voluntarily associated together in organizations, state-wide and nation-wide. These voluntary organizations contain perhaps the majority of all baptist churches, though of course a great many baptist churches throughout the nation including Texas have no outside affiliation with other baptist churches or groups other than that of common faith and practice. In Texas a great many independent baptist churches belong to the Baptist General Convention of Texas which in turn is affiliated with the Southern Baptist Convention, a national organization, and others like the First Baptist Church of Trinity Heights are affiliated with the Baptist Missionary Association of Texas which in turn is affiliated with the North American Baptist Association, a national organization."

■ The record shows that in 1951 the Association of Dallas County Baptist Missionary Association churches, known as the Dallas County Baptist Association, rejected messengers sent to their meeting by the majority group of the First Baptist Church of Trinity Heights and seated messengers from the minority group and at the State Convention of the Association in Lubbock in 1951 minority group messengers were likewise seated.

Appellants cite us to Sections 1, 2 and 3 of Article 3, of the Baptist Missionary Association Constitution which read:

"Section 1. This body shall be composed of such regular Baptist Churches as may agree to unite with this Association by means of Messengers to carry out the object heretofore set forth in Article II of this Constitution.

"Sec. 2. The sessions of this Association shall be held by Messengers appointed by the churches.

"Sec. 3. Each Messenger entitled to a seat in this Association shall be provided with a certificate of his election, signed by the presiding officer or clerk of the body electing him, or other satisfactory evidence of his election as a Messenger to this body."

Appellants then proceed to argue the law of the question presented by this point citing numerous authorities.

We are convinced that this point is academic and wholly collateral to the merits of this appeal. Our reasons for this holding have been previously stated.

We do, however, wish to direct attention to Section 6 of Article 3 of the Baptist Missionary Association Constitution which reads:

"Each church shall be the sole judge as to the qualifications of her Messengers."

Since the independent sovereignty of all Baptist churches is conceded by all it would seem that the Baptist Missionary Association, both County and State, disregarded section 6 of the Constitution when seats were denied messengers sent by the First Baptist Church of Trinity Heights and messengers from a dissident group in that church were seated. No doubt the Baptist Missionary Association has authority to reject all messengers from any church but the Constitution plainly provides that when a church agrees to unite with the Association that it should be the exclusive judge of the qualification of its messengers. There was only one church involved here and that was the First Baptist Church of Trinity Heights and the messengers selected by it in accordance with its independent and congregational form of government were the valid representatives of that church in the capacity for which they were selected and messengers otherwise selected were without the realm of constitutional authority.

We overrule Point One.

Appellants' Third Point relates to the cross examination of their witness J. R. Rainey regarding his part in the resignation in 1935 or 1936 of Reverend Shoptaw as Pastor of the Trinity Heights Church.

Appellants' Fourth Point relates to admitting in evidence the testimony of Reverend Dennis, present pastor of the church, that he would have endorsed a resolution reaffirming his faith in the 1922 Baptist Missionary Association Constitution had such a resolution been offered.

Appellants' Fifth Point is directed to the asserted error of the court in admitting in evidence Pendleton's Manual and in permitting excerpts therefrom to be read to the jury. Pendleton's Manual was published in the 1700's and is a basic statement of faith and religious principles used and accepted by all Baptist churches.

In view of our disposition of Points One, Six and Seven we consider Points Three, Four and Five immaterial and determination thereof unnecessary.

■ Point Two complains of the judgment entered on the jury finding that appellants had waived their rights to the church property. This finding was based upon evidence that the minority group had been holding church for themselves off the church premises since about the time this suit was filed.

There was no evidence that any of the minority group had been dropped from the rolls of the church.

The judgment in this regard was that appellants and their class "have waived and abandoned their rights in and to Lots 9 and 10 in Block 20 as above described."

In our opinion this recital is a mere fact finding repetitious of the jury finding and that no relief based on this finding was decreed in the judgment.

Appellants' point is that appellees did not seek affirmative relief in their pleadings, praying only that appellants take nothing and for general relief and costs.

Our direct answer to this point is that appellees have not been awarded any affirmative relief, the decretal portion of the judgment being purely negative, except as to recovery of costs.

However in order to avoid any misunderstanding or confusion we will delete from the judgment the finding referred to and leave for future determination by proper authorities the right of the minority group to use, enjoy and worship on the premises involved in this controversy.

The judgment of the trial court is reformed by deleting therefrom the finding relating to waiver and abandonment of the minority group of their rights in and to the church property and as reformed the judgment of the trial court is affirmed.

Reformed and affirmed.