COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CLINTON W. AIRHEART, | § | No. 08-11-00037-CR |
| | § | |
| Appellant, | § | Appeal from the |
| | § | |
| v. | § | Criminal District Court No. 2 |
| | § | |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| | § | |
| Appellee. | § | (TC# 1215028R) |

## **O P I N I O N**

Clinton W. Airheart appeals his conviction for aggravated assault on a public servant, a first degree felony. Appellant brings eleven issues arguing that the trial court erred: (1) in denying Appellant's motion for a recess; (2) through (6) in admitting five exhibits because the admission violates provisions of the Texas Rules of Evidence; (7) in overruling an objection to inadmissible testimony under the Texas Rules of Evidence; (8) by not submitting a lesser-included offense of reckless conduct; (9) in rejecting Appellant's application paragraph incorporating voluntary conduct. In Issue Ten, he contends that the prosecutor engaged in improper jury argument, and in Issue Eleven that the evidence is legally insufficient. We affirm.[1]

## **PROCEDURAL BACKGROUND**

Appellant was indicted on one count of aggravated assault on a public servant and entered a plea of not guilty on December 7, 2010. The jury found Appellant guilty of aggravated assault on a public servant following a five-day trial. During the punishment phase, Appellant pleaded

---

[1] This case was transferred from the Second Court of Appeals to this Court pursuant to a docket equalization order entered by the Texas Supreme Court. *See* TEX.GOV'T CODE ANN. § 73.001 (West 2005). We have applied precedent of the Fort Worth Court of Appeals. *See* TEX.R.APP.P. 41.3.

true to a repeat offender allegation.[2] The jury assessed his punishment at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. Appellant timely appealed his conviction and sentence.

## FACTUAL BACKGROUND

On June 5, 2009, Starlet Airheart ("Mrs. Airheart") phoned 911 to report that she had been assaulted by Appellant. Appellant dumped her purse on her head while she was sleeping, which was followed by an argument that developed into physical violence, including Appellant choking Mrs. Airheart several times. Mrs. Airheart left their residence, located at 4709 Forbes Street, went to a neighbor's house, called the police, and then waited outside with her children.

Officer J. B. McGinty, Jr., ("Officer McGinty") was dispatched to the Forbes Street residence on a domestic disturbance call, arriving at approximately 8 a.m. Officer McGinty was driving a marked patrol car and was wearing a police uniform. He spoke with Mrs. Airheart and noticed she had visible injuries. Officer McGinty called for an assist unit based on a number of factors including that the door was secured, he could not get inside, did not have a family violence packet with him, and needed a camera. Officer Sean Kelm ("Officer Kelm") was dispatched as the assist unit, arriving in a marked police car and wearing his police uniform. When Officer Kelm arrived, Officer McGinty relayed to him the information provided by Mrs. Airheart, including her concern that the Appellant might have access to a "pistol" and an "AK-47."

The officers knocked on the front door and announced "Fort Worth police" several times. When no one answered, Mrs. Airheart retrieved a key and unlocked the front door of the residence,

---

[2] Appellant had prior convictions for burglary of a habitation, evading arrest, driving while intoxicated, driving with license suspended, assault, possession of a controlled substance, theft of property $500 to $1500, theft of service or property $50 to $500, and forgery. At the time of his arrest, Appellant had a warrant for his arrest issued after Appellant violated conditions of pretrial bond for another theft offense.

and the officers entered the residence with their weapons drawn. The officers moved through the residence, briefly looking in each room for Appellant. When they reached the back bedroom, Officer McGinty observed a mattress move, indicating someone was hiding there. Calling from the hallway for the person to come out, Appellant eventually emerged from under the mattress. Officer Kelm ordered Appellant to stand up and put his hands in the air, which Appellant complied with.

As Officer Kelm entered the bedroom to handcuff Appellant, Officer McGinty noticed that Appellant had a gun stuffed in his waistband, and yelled "gun." Appellant drew the gun, pulling it from his waistband and pointing it at the officers. Officer McGinty was not sure who fired first. Officer Kelm testified that Appellant fired first. The record is clear that Appellant fired at the officers, and that both officers fired at Appellant. Officer Kelm testified that he saw the muzzle blast and felt the heat from the blast on the left side of his face. Officer McGinty thought Officer Kelm had been shot. Appellant was shot in the abdomen and fell to the floor.

While Appellant was on the floor, the officers ordered him to put his hands where they could see them. Appellant complied, and was handcuffed by the officers. The officers found Appellant's gun beneath his body and secured the weapon. The officers dragged Appellant to the living room and called for an ambulance and additional officers. During their investigation following the shooting, crime scene officers discovered an AK-47 in a sleeve of a jacket, and bullets for it in a shoebox, in a closet in the back bedroom where the shooting took place.

**DISCUSSION**

Appellant presents eleven issues, seeking to have the Court reverse the judgment and enter a judgment of acquittal, remand the cause for a new trial on both guilt/innocence and punishment,

3

or remand for a new trial on punishment.

## Motion for Continuance

In Appellant's first issue, he argues that the trial court erred by not granting him a recess during the penalty trial until after the effects of medications he had been given the night previous wore off. Appellant argues that he was extremely drowsy, nauseated, and was unable to participate in the trial. Appellant asserts that the jury would have seen this and drawn any number of negative inferences against Appellant. The State contends that Appellant failed to preserve this issue because there was no written motion for a continuance, or in the alternative, that the trial court did not abuse its discretion in denying the request.

On the start of the last day of the punishment trial, December 10, 2010, outside the presence of the jury, Appellant's counsel made an oral motion for a recess requesting a continuance until either later the same day or until the following Monday, as Appellant was "feeling sick" from the effects of the medication that the nurse had given him the night before. In response to questions posed by the trial court while under oath, Appellant testified he was being denied his right to counsel and ability to confer with counsel due to his "physical limitation." Appellant's counsel advised the court that Appellant did not intend to testify. There was no evidence presented indicating what type of medication was given to Appellant, when it had been given, the dosage, or why it had been given. The trial court denied the continuance, but stated that "if [Appellant] gets to the point that he feels nauseated or something like that, I want him to notify the bailiff and we'll provide something for him in that event."

Appellant argues that by "sitting before the jury while extremely drowsy, nauseated, and sick" and that the jury "might have concluded" that the Appellant "had been medicated for a

4

reason." Furthermore, that reason would be prejudicial to Appellant, "because he had been violent or was potentially violent and needed sedation for purposes of the remaining punishment proceedings." Appellant argues that this is "comparable to displaying a defendant before the jury in shackles," particularly in light of testimony from the day when Appellant's maladaptive behavior was discussed.

Nothing in the record shows that this argument was raised before the trial court. Appellant has failed to preserve this due process complaint for review by this Court. *See* TEX.R.APP.P. 33.1; *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993)(rejecting due process complaint when party failed to raise it at trial); *Sano v. Greenlee*, 2011 WL 2436737, at *8 (Tex.App.--Fort Worth June 16, 2011, no pet.)(mem. op.)(same).

However, assuming *arguendo*, that the issue remains ripe for appellate review, the Texas Code of Criminal Procedure permits a continuance only upon a written motion sworn by the State or the defendant. TEX.CODE CRIM.PROC.ANN. arts. 29.03, 29.08 (West 2006). The Court of Criminal Appeals has stated, "[a] motion for continuance not in writing and not sworn preserves nothing for review." *Dewberry v. State*, 4 S.W.3d 735, 755 (Tex.Crim.App. 1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). Appellant's argument here is that his request was a motion for a recess based on equitable grounds. *See Munoz v. State*, 24 S.W.3d 427, 431 (Tex.App.--Corpus Christi 2000, no pet.). The *Munoz* court notes that case law supports such a request, and that such a motion, "based on equitable grounds rather than statutory grounds, is entirely within the sound discretion of the court, and will only call for reversal if it is shown that the court clearly abused its discretion." *Munoz*, 24 S.W.3d at 431, *citing Alvarado v. State*, 818 S.W.2d 100, 103 (Tex App.--San Antonio 1991, no pet.). The *Munoz* court notes a separate line

5

of cases which generally, but not uniformly, recognizes a counsel's right to make an oral motion for a continuance which is enforceable via the equitable powers of the court of appeals. *Munoz*, 24 S.W.3d at 431. This would require a showing that the denial of the motion by the trial court amounts to a denial of a fundamental principal of due process, at which point that ruling is subject to appellate review. *Id.*, *citing Petrick v. State,* 832 S.W.2d 767, 770-71 (Tex.App.--Houston [1st Dist.] 1992, pet. ref'd); *O'Rarden v. State,* 777 S.W.2d 455, 459 (Tex.App.--Dallas 1989, pet. ref'd).

As in *Munoz*, Appellant did not file a sworn, written motion for a continuance. The unsworn oral motion made by Appellant's trial counsel, whether a motion for a continuance or a motion for a recess, can therefore only be based on equitable grounds rather than statutory grounds. Therefore the trial court's decision will only be overturned if there was a clear abuse of discretion. *Munoz*, 24 S.W.3d at 431-32, *citing Hernandez v. State*, 492 S.W.2d 466, 467 (Tex.Crim.App. 1973).

There is no evidence that the trial court abused its discretion in this case. The record shows that the trial court was ready to take action should Appellant's condition have worsened during the proceedings. Nothing in the record indicates any change in Appellant's condition following the denial of the motion. The record reflects a discussion later that same morning between the judge and Appellant regarding Appellant's decision not to testify. No mention was made of Appellant's condition at that time. We find no abuse of discretion in the trial court's denial of Appellant's motion. Issue One is overruled.

### Errors in Admitting Evidence

Appellant's second through sixth issues relate to admission of State's Exhibits 146, 147,

148, 149, and 179 on the basis that their admission violated Rules 401, 403, and 404(b) of the Texas Rules of Evidence. The State argues that Appellant failed to preserve complaints regarding these exhibits as Appellant did not object to them prior to their admission or, alternatively, that the trial court did not abuse its discretion in admitting the exhibits.[3]

Exhibits 146 through 149 are photographs of the AK-47 and of items related to it, while Exhibit 179 was the AK-47 rifle itself. The exhibits were introduced as part of the testimony of Officer Presney, who was assigned to the crime scene search unit. Officer Presney testified that he found the AK-47 inside the sleeve of a jacket in the closet in the back bedroom and ammunition for the weapon in a shoebox. He was shown Exhibits 146 through 149 and indicated that these photographs showed where the weapon and the ammunition were found. Following this identification, the State offered the photographs as exhibits, at which time counsel for Appellant objected on the grounds that their admission violated Rules 401, 403, and 404(b). The court viewed the photos and overruled the objections. Officer Presney was shown and identified Exhibit 179, the AK-47, which was then introduced as an exhibit, subjected to an objection from Appellant on the same ground as above, which the court overruled.

A similar situation occurred in *Ratliff v. State*, 320 S.W.3d 857 (Tex.App.--Fort Worth 2010, pet. ref'd). In *Ratliff*, the appellant filed a motion to suppress evidence but did not obtain a ruling on the motion or a pretrial hearing. The appellant in *Ratliff* allowed a detective to testify about the evidence before objecting to the admission of the physical evidence. The *Ratliff* court held that the appellant's failure to object at the time the detective specifically described the

---

[3] During a pretrial hearing, counsel for Appellant asserted a general Motion to Suppress seeking to suppress all evidence obtained as being obtained without a search warrant. The trial court held it in abeyance, based on both counsels advising that the motion can be handled through the course of the trial. No ruling was obtained regarding this motion.

physical evidence and how he obtained the evidence resulted in appellant forfeiting any error relating to his objection to the State's later introduction of the evidence. *See* TEX.R.APP.P. 33.1; *Ratliff*, 320 S.W.3d at 862, *citing Tell v. State,* 908 S.W.2d 535, 538, 543-44 (Tex.App.--Fort Worth 1995, no pet.)(concluding that "[b]ecause Tell failed to object at the time the ski mask was mentioned and allowed further questions and answers before finally objecting," he "waived any error in the admission of the ski mask."); *Turner v. State,* 642 S.W.2d 216, 216-17 (Tex.App.--Houston [14th Dist.] 1982, no pet.)(holding that the defendant forfeited his objections at trial by allowing the detective to testify "extensively to the arrest and the items found in the search" where appellant did not object to the testimony but only to five exhibits). Here, Appellant did not seek a ruling on his motion to suppress evidence instead he agreed to permit the trial court to hold it in abeyance during the trial. Appellant allowed testimony regarding the AK-47 and associated items to proceed without objection, objecting only once to the State attempting to introduce the physical evidence itself. Appellant has waived any error in admission of the AK-47 and the associated photographs.

Even if he had not waived error, we still find no abuse of discretion in admitting the exhibits. A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *See De la Paz v. State*, 279 S.W.3d 336, 343 (Tex.Crim.App. 2009). A trial court abuses its discretion when its decision lies outside the "zone of reasonable disagreement." *De la Paz*, 279 S.W.3d at 343-44.

As a general matter, relevant evidence is admissible. *See* TEX.R.EVID. 402. Evidence may be excluded despite its relevance, however, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

8

considerations of undue delay, or needless presentation of cumulative evidence.  TEX.R.EVID.

403.  An objection under Rule 403 requires the trial court to weigh the probative value of the

evidence to determine whether it is substantially outweighed by its potential for unfair prejudice.

*Santellan v. State*, 939 S.W.2d 155, 169 (Tex.Crim.App. 1997).  A Rule 403 balancing test

includes consideration of several factors:  (1) the inherent probative force of the proffered item of

evidence; (2) the proponent's need for the evidence; (3) the evidence's tendency lead to a decision

on an improper basis; (4) any tendency of the evidence to confuse or distract the jury from the main

issues in the case; (5) the tendency of the evidence to be given undue weight by a jury that has not

been equipped to evaluate the probative force of the evidence; and (6) the likelihood that the

presentation of the evidence will consume an inordinate amount of time, or be cumulative of

evidence already admitted.  *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 n.8 (Tex.Crim.App.

2006).

### 1.  Probative Value and Need

With regard to both the photographs and the weapon, the trial court could reasonably have

concluded that the evidence was probative to show that Appellant had access to an AK-47, which

was located in a closet in the same room as Appellant.[4]

### 2.  Unfair Prejudice

Appellant argues that the exhibits had the tendency to incite the jury into deciding the case

on an improper basis, contending he was not being tried for illegally possessing an assault rifle or

with threatening anyone with an assault rifle.  While the exhibits were certainly prejudicial to

---

[4] Indeed, the evidence was relevant given the fact that Mrs. Airheart had informed the police officers that Appellant did have access to a pistol and an AK-47.

Appellant, the trial court could reasonably have concluded that the prejudice was not so unfair as to warrant exclusion.

### 3. Confusion of the Issues

As was discussed in factor one, supra, the evidence presented by the State was consistent with the theory that Appellant had access to an AK-47 in the same room he was found and where he opened fire on police officers. There is no indication in the record that the challenged exhibits created or added any confusion regarding the events leading up to and following the shooting. Accordingly, the trial court could reasonably have concluded that the evidence had very little tendency to confuse, and that the evidence assisted the jury in understanding the entirety of the circumstances surrounding the shooting.

### 4. Misleading the Jury

Similar to our analysis under factors one and three, due to the nature and content of the evidence at issue, the trial court could reasonably have concluded that there was little danger the exhibits would mislead the jury.

### 5. Undue Delay and Needless Presentation of Cumulative Evidence

As is evident from the record, the State presented evidence regarding the AK-47 during the guilt-innocence phase of trial through multiple witnesses, including Mrs. Airheart and crime scene officers. However, in light of the probative value of the exhibits, the trial court could reasonably have concluded that there was no undue delay implicated by their presentation and could reasonably have concluded that to the extent the exhibits were cumulative, their presentation was necessary.

In sum, having considered the Rule 403 factors as they relate to the challenged items of

evidence, we conclude that the trial court could reasonably have concluded that the probative value of the evidence was not substantially outweighed by the potential for undue prejudice. Therefore, the trial court's decision to admit the evidence over Appellant's objection was not an abuse of discretion in either instance.[5] Issues Two through Six are overruled.

### Error in Admission of Statement

Appellant's seventh issue asserts that the trial court erred in overruling his objection to a statement made by Mrs. Airheart that he argues was inadmissible under Rules 401, 403, and 404(b) of the Texas Rules of Evidence. The State argues that the Appellant has failed to preserve this issue for review and even if it was properly preserved, that the court did not abuse its discretion in overruling the objection. The State argues that Appellant's objection was untimely, as the objection was not raised until the prosecutor had proceeded into asking the next question and therefore, the objection was not made at the "first opportunity" or "as soon as the ground for complaint is apparent or should be apparent." *Aguilar v. State*, 26 S.W.3d 901, 905-06 (Tex.Crim.App. 2000). The State cites to *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex.Crim.App.), *cert. denied*, 522 U.S. 917, 118 S.Ct. 305, 139 L.Ed.2d 235 (1997), in support of their argument that the objection was untimely and therefore waived. In *Lagrone*, the prosecutor asked two questions then passed the witness before the defense counsel raised an objection to both questions. The Court of Criminal Appeals found that the objection there was untimely and therefore the error was not preserved. We agree.

Mrs. Airheart testified that before the police entered the residence, she heard noises coming from inside the house but did not know what the noises were at the time. She then testified that

---

[5] Having concluded that the rulings were not erroneous, there is no need to conduct a harm analysis. *See* TEX.R.APP.P. 44.2(b).

11

when the police allowed her back inside the house she found that Appellant had broken all the pictures of her children. As the prosecutor began asking his next question, counsel for Appellant objected on the basis of Rules 401, 403, and 404(b) and the trial court overruled the objection. Here, the record reflects that the State asked a series of four questions regarding the noises, each of which were asked and answered, and was in the process of asking a fifth question when the objection was made. The objection was not timely and the record reflects no good cause offered to explain why there was a delay in making the objection. Therefore, nothing is preserved for our review. *Lagrone*, 942 S.W.2d at 618. *See also Polk v. State*, 729 S.W.2d 749, 753 (Tex.Crim.App. 1987). Appellant's seventh issue is overruled.

Even assuming the error was preserved, we find no harm. Rule 44.2(b) of the Texas Rules of Appellate Procedure provides that "[a]ny other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX.R.APP.P. 44.2(b). A conviction should not be overturned if the appellate court, after examining the record as whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *See Ex parte Martinez*, 330 S.W.3d 891, 903 (Tex.Crim.App. 2011). In examining the record, pointing out that Appellant broke pictures of Mrs. Airheart's children was not the likely "tipping point" which led to Appellant's conviction for aggravated assault on a public servant. The testimony explained the entirety of the circumstances, specifically the domestic violence call, which precipitated the police involvement that morning.[6] The other evidence submitted during the course of the trial overwhelmingly supported the jury's determination of guilt. Therefore, even assuming Appellant's objection was timely made, any error was harmless. Appellant's seventh issue is overruled.

---

[6] For example, Mrs. Airheart testified, without objection, that Appellant physically assaulted her prior to her calling 911.

**Lesser Included Offense**

Appellant's eighth issue argues that the trial court erred by not submitting the lesser included offense of reckless conduct. On the final day of the trial, Appellant requested that the charge include the lesser-included offense of deadly conduct[7] and submitted a proposed charge, which the court rejected. Appellant claims that the error was harmful because it left the jury no alternative but to convict Appellant of the charged offense. Appellant cites to *Bell v. State*, 693 S.W.2d 434, 436, 439 (Tex.Crim.App. 1985)(identifying Section 22.05 as reckless conduct) in support of his argument that deadly conduct is a lesser included offense of aggravated assault.

In *Bell*, the Court of Criminal Appeals noted that "[w]hether one offense bears such a relationship to the offense charged so as to constitute a lesser included offense" is determined on a case-by-case basis. *Id.* at 436. "An allegation that an offense has been committed in one way may include a lesser offense, while an allegation that the offense was committed in another way would not include the lesser offense."

Courts must perform a two-step analysis in determining whether to submit a lesser-included charge: (1) the requested charge is for a lesser-included offense of the charged offense; and (2) there is some evidence that, if the defendant is guilty, he is guilty only of the lesser offense. *Amaro v. State*, 287 S.W.3d 825, 827 (Tex.App.--Waco 2009, pet. ref'd). The first prong is determined from a review of the pleadings. Performed by comparing the statutory elements of the offense charged in the indictment with the elements of the requested lesser offense, this determination is one of law and does not depend on the evidence presented at trial. If the first requirement is met, the second prong requires a review of the evidence to determine if there is any evidence that, if Appellant is guilty, he is guilty of only the lesser offense. *See Hall v. State*, 225

---

[7] TEX.PENAL CODE ANN. § 22.05(b)(1)(West 2011).

S.W.3d 524, 535-36 (Tex.Crim.App. 2007).

We first turn to the language of the indictment for aggravated assault against a public servant.[8] The indictment charged that Appellant:

> [D]id intentionally or knowingly threaten imminent bodily injury to S. Kelm, a public servant, to-wit: an employee or officer of government, namely a police officer for the city of Fort Worth, while S. Kelm was lawfully discharging an official duty and the defendant knew that S. Kelm was a public servant, and the defendant did use or exhibit a deadly weapon during the commission of the assault, to-wit: a firearm.

An offense is a lesser included offense if: (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or (4) it consists of an attempt to commit the offense charged or an otherwise included offense. TEX.CODE CRIM.PROC.ANN. art. 37.09 (West 2006).

Here the indictment alleges the following statutory elements of aggravated assault on a public servant: (1) Appellant; (2) intentionally or knowingly; (3) threatened Officer Kelm with imminent bodily injury; (4) while exhibiting or using a deadly weapon; and (5) knew that Officer Kelm was a public servant lawfully discharging an official duty. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B), (c)(West 2011). The statutory elements of deadly conduct are: (1) a person (2) recklessly (3) engages in conduct that places another in imminent danger of serious bodily injury. TEX.PENAL CODE ANN. § 22.05(a)(West 2011). Recklessness and

---

[8] For comparison, the indictment in *Bell* alleged that the defendant: "[D]id then and there knowingly and intentionally use a deadly weapon, to wit: a firearm, and did then and there threaten George Smith with imminent bodily injury by the use of said deadly weapon." *Bell*, 693 S.W.2d at 437.

danger are presumed if the actor knowingly pointed a firearm at or in the direction of another. *Id*. at § 22.05(c).

The *Amaro* court performed a comparison of *Bell*, which held that deadly conduct is a lesser-included offense of aggravated assault, with *Miller v. State*, 86 S.W.3d 663 (Tex.App.--Amarillo 2002, pet. ref'd), where the court held that deadly conduct was not, based on the indictment, a lesser-included offense of aggravated assault against a public servant.[9] The *Amaro* court questioned *Miller*, concluded that *Bell* was more persuasive and held that deadly conduct is a lesser-included offense of aggravated assault on a public servant "under the circumstances of this case because it is established by proof of the same facts required to establish the commission of aggravated assault on a public servant by exhibiting a deadly weapon." *Amaro*, 286 S.W.3d at 829. We find that the first prong of the *Amaro* test is met in this case.

Turning to the second prong of the analysis, if there is some evidence in the record that would permit a jury to rationally conclude that Appellant is guilty and "guilty *only* of the lesser-included offense," then Appellant would be entitled to a deadly conduct instruction. *Amaro*, 286 S.W.3d at 830, *citing Hall*, 225 S.W.3d at 536 [Emphasis added]. Appellant argues that Officer Kelm, as a public servant, is necessarily also an "individual" and that Appellant

---

[9] As the court notes in *Miller*:

> Whereas the indictment in *Bell* charged the defendant in that case with committing the offense of aggravated assault by 'using' a deadly weapon, the indictment in appellant's case charged appellant with committing the offense by 'using or exhibiting' a deadly weapon. Thus, proving the offense as alleged in the indictment does not require proof that appellant 'used' a deadly weapon; proof that appellant 'exhibited' a deadly weapon in the commission of the offense would suffice. *The difference is dispositive, as it does not necessarily follow that the danger of serious bodily injury is established when a deadly weapon is 'exhibited' in the commission of the offense as opposed to being 'used.'*

*Miller*, 86 S.W.3d at 666-67 [Emphasis added].

discharged his firearm at an "individual" named Sean Kelm. We are not persuaded by this argument. The record clearly reflects that Appellant knowingly and intentionally exhibited or used a firearm by pointing and firing it at two uniformed Fort Worth police officers who announced their presence and were acting in accordance with the law. The testimony at trial showed that Appellant deliberately drew a pistol when Officer McGinty spotted it and shouted "gun," pointed it at the officers, then fired at them. The record contains no evidence that shows that Appellant is guilty *only* of deadly conduct. *See Amaro*, 287 S.W.3d at 830-31. *See also Bignall v. State*, 887 S.W.2d 21, 24 (Tex.Crim.App. 1994)("If a defendant either presents evidence that he committed no offense or presents no evidence, and there is no evidence otherwise showing he is guilty only of a lesser included offense, then a charge on a lesser included offense is not required."). Because the second prong is not met, Appellant was not entitled to an instruction on deadly conduct and we overrule Appellant's eighth issue.

### Application Paragraph

The ninth issue asserted by Appellant is that the trial court erred in rejecting Appellant's application paragraph incorporating voluntary conduct. The trial court included the instruction requested by Appellant regarding voluntary conduct, but not the application paragraph incorporating the same.

Appellant requested the following instruction be included:

> Therefore, if you believe from the evidence beyond a reasonable doubt that on the occasion in question the defendant . . . did threaten a public servant . . . with imminent bodily injury and that he did use or exhibit a deadly weapon, to-wit: a firearm, as alleged in the indictment, but you further believe from the evidence, or you have a reasonable doubt thereof, that the threat was the result of an accident and was not the voluntary act of conduct of the defendant, you will acquit the defendant and say by your verdict 'Not Guilty.'

16

Appellant contends that the trial court agreed that voluntary conduct was the law that applied to the case but declined to incorporate voluntary conduct into the application paragraph, which was error. Appellant argues that because the record is not clear as to who fired first, that "[i]t is possible Appellant returned fire as an involuntary reflex to being fired upon."

Appellate courts undertake a two-step process when reviewing charge errors. First, the court must determine whether error exists in the charge, and second, the court must determine whether sufficient harm resulted from the error such to require reversal. *Abdnor v. State*, 871 S.W.2d 726, 731-32 (Tex.Crim.App. 1994).

The record does not reflect that Appellant objected to the jury charge,[10] and therefore failed to preserve error. Because of this failure, Appellant would have to show he suffered egregious harm. *Abdnor*, 871 S.W.2d at 732, *citing Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984).

A person "commits an offense only if he voluntarily engages in conduct." TEX.PENAL CODE ANN. § 6.01(a). "Voluntariness," as used in Section 6.01(a):

> [R]efers only to one's own physical body movements. If those physical movements are the nonvolitional result of someone else's act, are set in motion by some independent non-human force, are caused by a physical reflex or convulsion, or are the product of unconsciousness, hypnosis or other nonvolitional impetus, that movement is not voluntary.

*Rogers v. State*, 105 S.W.3d 630, 638 (Tex.Crim.App. 2003).

The *Rogers* court notes that both the Model Penal Code and the Practice Commentary to

---

[10] Appellant argues that he objected to the charge, however, the record does not show any objection. Appellant's counsel read a proposed charge to the trial judge and the judge responded "[a]s to your request on voluntary conduct charge, the Court has included the language, without the application paragraph." No objection to the charge was made at that time. The next day, when the charge was read in its entirety to the jury, Appellant did not object. Therefore, Appellant has failed to preserve error. TEX.R.APP.P. 33(1). *See Irizarry v. State*, 916 S.W. 2d 612, 614-15 (Tex.App.--San Antonio 1996, pet. ref'd).

the 1974 Texas Penal Code focused that a "voluntary act" does not necessarily require the ultimate act (e.g., pulling a trigger), "but only that criminal responsibility for the harm must 'include an act' that is voluntary (e.g., pulling the gun, pointing the gun, or cocking the hammer)." *Rogers*, 105 S.W. 3d at 638, *citing* Model Penal Code § 2.01, Comment at 217. Involuntary conduct is a defense to prosecution. *Trujillo v. State*, 227 S.W.3d 164, 169 (Tex.App.--Houston [1st Dist.] 2006, pet. ref'd). To be entitled to a charge on the issue of voluntariness, "there must be evidence of an independent event, such as the conduct of a third party, that could have precipitated the incident." *Rhodes v. State*, 997 S.W.2d 692, 694 (Tex.App.--Texarkana 1999, pet. ref'd).

We have found no evidence in the record, and Appellant has failed to direct us to any, which suggests that his actions were somehow nonvolitional, the result of reflex, convulsion, or some other impetus. The record reflects that Appellant raised his arm, pointed a firearm at uniformed police officers, and fired it. The record establishes that Appellant's firearm required more than ten pounds of pressure to pull the trigger. No evidence was introduced to suggest that Appellant's actions were anything other than "voluntary." *See e.g.*, *Rogers*, 105 S.W.3d at 638-39; *Gokey v. State*, 314 S.W.3d 63, 68-9 (Tex.App.--San Antonio 2010, pet. ref'd, untimely filed)(finding that defendant acted "voluntarily" while swinging knife at deputies and where no evidence was introduced that he did not act voluntarily). "In the absence of evidence that an appellant's conduct was involuntary, such conduct is voluntary as a matter of law, and no jury instruction is required." *Rhodes*, 997 S.W.2d at 695, *citing Moss v. State*, 850 S.W.2d 788, 795 (Tex.App.--Houston [14th Dist.] 1993, pet. ref'd). Because no evidence was introduced showing that Appellant's conduct was involuntary, his conduct is voluntary as a matter of law and therefore, no jury instruction was required. Further, Appellant has failed to show any harm given the

18

inclusion of Appellant voluntary conduct instruction. Appellant's ninth issue is overruled.

## Improper Jury Argument

Appellant's tenth issue is that the prosecutor engaged in improper jury argument during the punishment trial. Appellant acknowledges that there was no objection made at trial to the prosecutor's statement. A defendant's failure to object to a jury argument forfeits his right to complaint about the argument on appeal. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996), *cert. denied*, 520 U.S. 1173, 117 S.Ct. 1442, 137 L.Ed.2d 548 (1997); *see also Threadgill v. State*, 146 S.W.3d 654, 670 (Tex.Crim.App. 2004)(reaffirming *Cockrell*).

Trial courts have a great deal of discretion to control the scope of closing arguments. *Lemos v. State*, 130 S.W.3d 888, 892 (Tex.App.--El Paso 2004, no pet.). Counsel may draw reasonable, fair, and legitimate inferences from the evidence presented at trial. *See Allridge v. State*, 762 S.W.2d 146, 156 (Tex.Crim.App. 1988). The applicable legal standard of review is whether, in light of the record as a whole, there is a reasonable possibility the improper argument might have contributed to Appellant's conviction. *See Wilson v. State*, 938 S.W.2d 57, 61 (Tex.Crim.App. 1996).

In determining whether the State engaged in improper jury argument, we consider the entire argument presented, not isolated sentences. *Rodriguez v. State*, 90 S.W.3d 340, 364 (Tex.App.--El Paso 2001, pet. ref'd). Generally, proper jury argument consists of: (1) summation of evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) a plea for law enforcement. *Jackson v. State*, 17 S.W.3d 664, 673 (Tex.Crim.App. 2000); *Morales v. State*, 11 S.W.3d 460, 463 (Tex.App.--El Paso 2000, pet. ref'd).

Under most circumstances, improper jury argument may be cured by an instruction to

disregard, unless "in light of the record as a whole it was extreme or manifestly improper, violative of a mandatory statute, or injected new facts harmful to the accused." *Hawkins v. State*, 135 S.W.3d 72, 75 (Tex.Crim.App. 2004), *citing Cooks v. State*, 844 S.W.2d 697, 727 (Tex.Crim.App. 1992), *cert. denied*, 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993).

To preserve error regarding improper jury argument, a party is required to continue to object each time improper jury argument is offered. *Dickerson v. State*, 866 S.W.2d 696, 699 (Tex.App.--Houston [1st Dist.] 1993, pet. ref'd). A defendant ordinarily should: (1) contemporaneously object to the statement; (2) request an instruction that the jury disregard the statement if the objection is sustained; and (3) move for a mistrial if the instruction is granted. *Cooks*, 844 S.W.2d at 727-28. However, while this sequence is not essential to preserve complaints for appellate review, the essential requirement is a timely, specific request that the trial court refuses. *Young v. State*, 137 S.W.3d 65, 69 (Tex.Crim.App. 2004). "[A]n event that could have been prevented by timely objection or cured by instruction to the jury will not lead an appellate court to reverse a judgment on an appeal by the party who did not request there lesser remedies in the trial court." *Young*, 137 S.W.3d at 70. Moreover, the appellate complaint challenging the motion for mistrial must comport with the motion made at trial. *Braxton v. State*, 909 S.W.2d 912, 918 (Tex.Crim.App. 1995). The mistrial motion must be timely, that is it must be made as soon as the grounds for the mistrial become apparent. *Griggs v. State*, 213 S.W.3d 923, 927 (Tex.Crim.App. 2007).

Here counsel did not lodge a single objection to the complained arguments. Appellant did not request an instruction from the trial court that the jury be ordered to disregard the prosecutor's statements, nor did he make a motion for mistrial. Under these circumstances, we cannot say that

Appellant preserved these complaints sufficient for our review.

However, had we determined otherwise, we would be obligated to decide whether Appellant's substantial rights were harmed by the arguments made by the State. *See Casey v. State*, 215 S.W.3d 870, 885 (Tex.Crim.App. 2007). A substantial right is affected when the error had substantial and injurious effect or influence on the jury's verdict. *Id*.

As noted above, where closing argument exceeds the permissible bounds of approved areas, it will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex.Crim.App. 2000), *citing Todd v. State*, 598 S.W.2d 286, 296-97 (Tex.Crim.App. 1980). "The remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Wesbrook*, 29 S.W.3d at 115, *citing Cantu v. State*, 939 S.W.2d 627, 633 (Tex.Crim.App.), *cert. denied*, 522 U.S. 994, 118 S.Ct. 557, 139 L.Ed.2d 399 (1997).

When analyzing any harm that may have been caused by an improper jury argument, we examine the following factors: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Ramon v. State*, 159 S.W.3d 927, 929 (Tex.Crim.App. 2004), *citing Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App. 1998)(op. on reh'g), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999).

We conclude, after considering the entire argument presented, as well as the record as a whole, that the remarks made by the prosecutor were a proper plea to law enforcement.

21

Essentially, the prosecutor's remarks were not a willful and calculated effort to deprive Appellant of a fair and impartial trial.

No cautionary instruction, or instruction to disregard was given to the jury because Appellant never made any such request.   Finally, the evidence to support the jury's verdict was substantial, even had the comments never been made.   Appellant's tenth issue is overruled.

**Sufficiency of the Evidence**

In his final issue, Appellant argues that the evidence is legally insufficient to support a conviction.

A court reviewing whether the evidence is sufficient to support a conviction is guided by the "legal-sufficiency standard," set out in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see Brooks v. State*, 323 S.W.3d 893, 899 (Tex.Crim.App. 2010)(upholding legal-sufficiency test as appropriate method for review of sufficiency of evidence to support verdict.   The Criminal Court of Appeals characterized the legal-sufficiency test as follows:   "Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt."   *Brooks*, 323 S.W.3d at 899, 902, *citing Jackson*, 443 U.S. at 319, 99 S.Ct. at 2781.   This standard incorporates the recognition that "the jury is the sole judge of a witness's credibility, and the weight to be given the testimony." *Brooks*, 323 S.W.3d at 902, *citing Lancon v. State*, 253 S.W.2d 699, 707 (Tex.Crim.App. 2008). When performing a legal sufficiency review, a reviewing court does not sit as a "thirteenth juror," re-evaluating the weight and credibility of the evidence and thus, substituting our judgment for that of the fact finder.   *Brown v. State*, 2004 WL 1944722, at \*4 (Tex.App.--Fort Worth Aug. 30, 2004, no pet.)(mem. op., not designated for publication), *citing Dewberry,* 4 S.W.3d at 740.

22

Aggravated assault by threat is a conduct-oriented offense as opposed to result oriented. *Landrian v. State*, 268 S.W.3d 532, 540 (Tex.Crim.App. 2008); *Dolkart v. State*, 197 S.W.3d 887, 893 (Tex.App.--Dallas 2006, pet. ref'd). A person acts "intentionally" "with respect to the nature of his conduct . . . when it is his conscious objective or desire to engage in the conduct . . . ." TEX.PENAL CODE ANN. § 6.03(a). A person acts "knowingly" "with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." *Id*. at § 6.03(b). Intent or knowledge may be inferred from acts, words, and conduct. *Hart v. State*, 89 S.W.3d 61, 64 (Tex.Crim.App. 2002), *quoting Manrique v. State*, 994 S.W.2d 640, 649 (Tex.Crim.App. 1999). An actor is presumed to have known the person assaulted was a public servant if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant. TEX.PENAL CODE ANN. § 22.02(c). *See Sherber v. State*, 2011 WL 4389614, at *4 (Tex.App.--Beaumont Sept. 21, 2011, no pet.)(mem. op., not designated for publication)(citing same in performing legal-sufficiency analysis where defendant was charged with aggravated assault against a public servant).

Appellant contends that the evidence shows that he "acted with a 'gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint,'"[11] and that his actions in "[p]ulling a gun from his waistband and then firing his weapon while two police officers were trying to arrest him was reckless conduct." The jury heard testimony that both officers were in full uniform and identified themselves as Fort Worth police officers. The jury also heard testimony that Officer McGinty yelled "gun" upon noticing a pistol in Appellant's waistband, that Appellant drew the gun from his waistband and

---

[11] TEX.PENAL CODE ANN. § 6.03(c).

pointed it at the officers, and that Appellant fired at the officers. Both officers fired at Appellant. Officer Kelm testified that he saw the muzzle blast and felt the heat from the blast on the left side of his face. As a trier of fact, the jury could reasonably conclude that Appellant intentionally or knowingly threatened Officer Kelm with imminent bodily injury and could infer that Appellant, seeing both officers in uniform, knew that Officer Kelm was a public servant. *See Gokey v. State*, 314 S.W.3d 63, 67 (Tex.App.--San Antonio 2010, pet. ref'd, untimely filed)(Section 22.2(c) applied where officer wore a badge and uniform and drove a marked patrol car, but even absent the presumption, the jury could infer that if Gokey and the officer faced each other, Gokey knew the officer was a public servant); *see also Anderson v. State*, 11 S.W.3d 369, 375-76 (Tex.App.--Houston [1st Dist.] 2000, pet. ref'd)("Aiming a deadly weapon at a supposed victim is sufficient evidence of a threat to sustain an aggravated assault conviction.").

Viewing the evidence in the light most favorable to the verdict, the jury was rationally justified in determining that Appellant committed aggravated assault against a public servant beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007); TEX.PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B). We overrule Appellant's final issue.

## CONCLUSION

Having overruled each of Appellant's issues, we affirm the trial court's judgment.

April 25, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)

24