

# IN THE
# TENTH COURT OF APPEALS

## No. 10-08-00160-CR

**PAUL AMARO,**

                                                                              **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                              **Appellee**


**From the 220th District Court**
**Hamilton County, Texas**
**Trial Court No. CR 07489**


# OPINION


A jury convicted Paul Amaro of aggravated assault on a public servant and assessed his punishment at thirty-six years in prison. In two issues, Amaro challenges the trial court's failure to grant his requested jury instructions on (1) deadly conduct as a lesser-included offense; and (2) the statutory defense of consent. We affirm.

## FACTUAL BACKGROUND

When his former girlfriend Paula Jean Jones stopped answering his telephone calls, Amaro left a message stating, "[T]his was real easy, all you had to do is answer

the phone." While listening to this message, both Jones and her friend Billy Mahan heard Amaro loading a shotgun in the background of the message. Mahan called police. Officer Abel Rios arrived at Jones's home and spoke to Amaro on the telephone several times. In one conversation, Amaro stated that he was coming over and something was going to happen. Amaro was belligerent and cursing. Rios advised Amaro that he would be arrested at gunpoint if he came to the house.

As Amaro pulled into the driveway, Rios unholstered his weapon. He saw Amaro pointing a rifle directly at him. Rios drew his weapon and ordered Amaro to put the weapon down. Amaro was leaning toward the passenger window. Rios sought cover. He then observed Amaro tracking him with the rifle. Amaro subsequently began moving the rifle back and forth between his own chin and at Rios.

Other officers arrived at the scene and a standoff ensued. Rios heard Amaro state that he wanted police to kill him, *i.e.*, suicide by cop. Officer Kyle Matthews observed Amaro place his vehicle in reverse several times, rev the engine, threaten to leave, yell, say that he was not giving up, and say that he was not going back to prison. Amaro was eventually arrested. Deputy Alan Kirkland recovered a 30-30 lever action rifle from Amaro's vehicle. The chamber contained one round and the hammer was pulled back; the rifle was ready to fire. Kirkland removed five rounds from the rifle.

Amaro testified in his own defense. He claimed that he kept the rifle in his truck because it was hunting season. He denied loading the rifle while leaving the message for Jones, pointing the rifle at Rios, intentionally threatening Rios, or tracking Rios with the rifle. He testified that Rios's weapon was drawn before he had stopped his vehicle.

Rios told Amaro to exit the vehicle. Amaro stayed seated and told Rios to put away his weapon. Amaro sat in his vehicle for a few minutes before showing the rifle to Rios and stating, "I have one too." Amaro placed the rifle in the seat, with the muzzle on the dashboard. He claimed that he could not have pointed the rifle in the manner described by Rios because he is of short stature, is left-handed, and would have had to adjust the seat. He admitted placing the rifle to his chin because he had lost the "love of his life."

## INSTRUCTION ON DEADLY CONDUCT

In his first issue, Amaro challenges the denial of his request for a jury instruction on deadly conduct as a lesser-included offense.

In determining whether to submit a lesser included charge, the court must conclude that: (1) the requested charge is for a lesser-included offense of the charged offense; and (2) there is some evidence that, if the defendant is guilty, he is guilty of only the lesser offense. *Guzman v. State*, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006); *Pierce v. State*, 234 S.W.3d 265, 269 (Tex. App.—Waco 2007, pet. ref'd). We determine the first issue from the pleadings. *See Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007); *Pierce*, 234 S.W.3d at 269. We must compare the statutory elements of the offense as set out in the indictment to the elements of the requested lesser offense. *See Hall*, 225 S.W.3d at 535-36; *Pierce*, 234 S.W.3d at 269. This issue is a legal question and does not depend on the evidence presented at trial. *See Hall*, 225 S.W.3d at 535; *Pierce*, 234 S.W.3d at 269. If the first requirement is met, we determine the second issue by reviewing the evidence to determine if there is any evidence that, if Amaro is guilty, he is guilty of only the lesser offense. *See Hall*, 225 S.W.3d at 536; *Pierce*, 234 S.W.3d at 269.

An offense is a lesser included offense if: (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or (4) it consists of an attempt to commit the offense charged or an otherwise included offense. TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon 2006).

The indictment alleges the following statutory elements of aggravated assault on a public servant: (1) Amaro; (2) intentionally or knowingly; (3) threatened Rios with imminent bodily injury; (4) while exhibiting a deadly weapon; and (5) knew that Rios was a public servant lawfully discharging an official duty. *See* TEX. PEN. CODE ANN. §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B), (c) (Vernon Supp. 2008). The statutory elements of deadly conduct are: (1) a person (2) recklessly (3) engages in conduct that places another in imminent danger of serious bodily injury. TEX. PEN. CODE ANN. § 22.05(a) (Vernon 2003). Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another. *Id*. at § 22.05(c).

Amaro cites *Bell v. State*, 693 S.W.2d 434 (Tex. Crim. App. 1985) and *Isaac v. State*, 167 S.W.3d 469 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) for the proposition that deadly conduct is a lesser-included offense of aggravated assault under the circumstances of this case.

In *Bell*, the Court of Criminal Appeals found reckless conduct[1] to be a lesser-included offense of aggravated assault by use of a deadly weapon under article 39.07(1) "because it is established by proof of the same facts required to establish the commission of aggravated assault by the use of a deadly weapon:"

> Patently, threatening another with imminent bodily injury is engaging in conduct. When that threat is accomplished by the use of a deadly weapon, by definition the victim is "exposed" to the deadly character of the weapon and the inherent risk of serious bodily injury. The *danger* of serious bodily injury is necessarily established when a deadly weapon is *used* in the commission of an offense. It follows, therefore, that proof of threatening another with imminent bodily injury by the use of a deadly weapon constitutes proof of engaging in conduct that places another in imminent danger of serious bodily injury.

*Bell*, 693 S.W.2d at 438-39. Following *Bell*, *Isaac* also held that deadly conduct is a lesser-included offense of aggravated assault. *See Isaac*, 167 S.W.3d at 474-45.

The State distinguishes *Bell* and *Isaac* on grounds that neither involved aggravated assault on a public servant. However, deadly conduct can be a lesser-included offense if it is established by proof of the *same or less* than all the facts required to establish aggravated assault on a public servant. TEX. CODE CRIM. PROC. ANN. art. 37.09(1). The reasoning of *Bell* and *Isaac* applies.

Citing *Miller v. State*, 86 S.W.3d 663 (Tex. App.—Amarillo 2002, pet. ref'd), the State further distinguishes *Bell*, where the indictment alleged use of a deadly weapon, and *Isaac*, where the indictment alleged use *and* exhibition, from the present case, where

---

[1]	Reckless conduct is the statutory predecessor to deadly conduct. *See* Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 920 (amended 1993) (current version at TEX. PEN. CODE ANN. § 22.05 (Vernon 2003)).

the indictment alleged only exhibition. In *Miller*, the Amarillo Court held that deadly conduct is not a lesser-included offense of aggravated assault on a public servant:

> Whereas the indictment in Bell charged the defendant in that case with committing the offense of aggravated assault by "*using*" a deadly weapon, the indictment in appellant's case charged appellant with committing the offense by "using *or exhibiting*" a deadly weapon. Thus, proving the offense as alleged in the indictment does not require proof that appellant "used" a deadly weapon; proof that appellant "exhibited" a deadly weapon in the commission of the offense would suffice. The difference is dispositive, as it does not necessarily follow that the danger of serious bodily injury is established when a deadly weapon is "exhibited" in the commission of the offense as opposed to being "used."

*Miller*, 86 S.W.3d at 666-67 (emphasis added).

*Miller* suggests that a person cannot be placed in imminent danger of serious bodily injury by mere exhibition of a deadly weapon. *See id.* However, merely pointing a firearm in another's direction can place that person in imminent danger of serious bodily injury. *See* TEX. PEN. CODE ANN § 22.05(c); *see also Hayes v. State*, No. 05-06-00980-CR, 2008 Tex. App. LEXIS 557, at *1-2, 6 (Tex. App.—Dallas Jan. 25, 2008, no pet.) (not designated for publication) (Evidence supported deadly conduct where defendant pointed a firearm at or in the direction of the complainant); *Brown v. State*, No. 02-03-00289-CR, 2004 Tex. App. LEXIS 8048, at *11-15 (Tex. App.—Fort Worth Aug. 30, 2004, no pet.) (not designated for publication) (Evidence supported deadly conduct where defendant pointed a semiautomatic firearm at or in the direction of the complainant). Pointing a weapon at another also constitutes exhibition. *See Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004) (Exhibition "requires a weapon to be 'consciously shown, displayed, or presented to be viewed.'"); *see also see Morales v. State*,

No. 11-03-00087-CR, 2004 Tex. App. LEXIS 3602, at *8 (Tex. App.—Eastland Apr. 22, 2004, pet. ref'd) (not designated for publication) (Evidence supported aggravated assault on a public servant where defendant "intentionally and knowingly threatened both officers with imminent bodily injury when he pointed his gun at them."). We do not agree that danger of serious bodily injury can be established only by use of a deadly weapon, but not exhibition of a deadly weapon.

Following *Bell*, we hold that deadly conduct is a lesser-included offense of aggravated assault on a public servant under the circumstances of this case because it is established by proof of the same facts required to establish the commission of aggravated assault on a public servant by exhibiting a deadly weapon. *See Bell*, 693 S.W.2d at 438-39; *see also Girdy v. State*, 213 S.W.3d 315, 319 (Tex. Crim. App. 2006) ("If as here, the prosecution, in proving the elements of one charged offense, also *necessarily* proves another charged offense, then that other offense is a lesser-included offense."); TEX. CODE CRIM. PROC. ANN. art. 37.09(1).

Under step two of the analysis, Amaro is entitled to a deadly conduct instruction if "'there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty *only* of the lesser-included offense.'" *Hall*, 225 S.W.3d at 536 (emphasis added). "[A]nything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge." *Id*. "[T]he evidence must establish the lesser-included offense as 'a valid, rational alternative to the charged offense.'" *Id*.

Amaro contends that the record contains some evidence that he did not intend to threaten Rios, but recklessly engaged in conduct that placed Rios in imminent danger of

serious bodily injury. In so arguing, he points to Rios's testimony that the rifle was pointed "at me *or in my general direction*." He also points to his own testimony in which he denied pointing the rifle at Rios or intentionally threatening Rios and explained showing the rifle to Rios only after Rios drew his weapon, placing the rifle in the front seat, and coming to the house with the sole intent of discussing some issues with Jones.

The record, however, supports intentional and knowing conduct, not recklessness. *See* TEX. PEN. CODE ANN. § 6.03(a) (Vernon 2003) (A person acts intentionally when it is his conscious objective or desire to engage in the conduct or cause the result."); *see also id*. at § 6.03(b) ("A person acts knowingly when he is aware of the nature of his conduct or that the circumstances exist."); *Id*. at § 6.03(c) ("A person acts recklessly when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur."). Amaro had threatened that something was going to happen and was heard loading the rifle. True to his word, Amaro arrived at the home with a loaded rifle, even though he had been warned that Rios was armed. Rios's testimony that Amaro pointed the rifle directly at him or in his general direction supports aggravated assault. *See St. Clair v. State*, 26 S.W.3d 89, 97 (Tex. App.—Waco 2000, pet. ref'd) (Defendant threatened officer with imminent bodily injury by aiming a vehicle in his direction); *see also Robbins v. State*, 145 S.W.3d 306, 314 (Tex. App.—El Paso 2004, pet. ref'd) (Evidence that defendant fired a gun in the officer's direction established aggravated assault). In fact, the jury certainly could have questioned why the rifle was cocked and ready to fire.

Relying on *Issac*, Amaro maintains that his testimony is sufficient to raise the issue of deadly conduct. In *Isaac*, the defendant admitted bringing a gun to his father's barber shop, but claimed that he intended to merely scare his family and then kill himself. *See Isaac*, 167 S.W.3d at 475. He denied pointing the gun at anyone and testified that the gun discharged only after he was tackled by his stepbrother. *Id*. Isaac admitted acting "foolishly," but denied intending to hurt anyone other than himself. *Id*. The Fourteenth Court held that Isaac's testimony "provided some evidence from which a jury could rationally find that, although [he] never intended to threaten his family with imminent bodily injury (a necessary element of aggravated assault), he did recklessly engage in conduct that placed his family in danger of serious bodily injury (as required to prove deadly conduct)." *Id*.

This conclusion, however, conflicts with the Court of Criminal Appeals's holding that "[a] defendant's own testimony that he committed no offense, or testimony which otherwise shows that no offense occurred at all, is not adequate to raise the issue of a lesser-included offense." *Lofton v. State*, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001). Amaro's testimony is not evidence that he is guilty of only deadly conduct. *See id.; see also Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994) ("If a defendant either presents evidence that he committed no offense or presents no evidence, *and there is no evidence otherwise showing he is guilty only of a lesser included offense,* then a charge on a lesser included offense is not required."); *Morales*, 2004 Tex. App. LEXIS 3602, at *12 ("If the jury had believed appellant's testimony that he did not point his gun at the officers, he would not have been guilty of either 'deadly conduct' or 'aggravated assault.'"). The

record contains no other evidence showing that Amaro is guilty *only* of deadly conduct. *See Hall*, 225 S.W.3d at 536; *see also Pierce*, 234 S.W.3d at 269.

In summary, because the second prong is not met, we conclude that Amaro was not entitled to an instruction on deadly conduct. *See Guzman*, 188 S.W.3d at 188; *see also Pierce*, 234 S.W.3d at 269. We overrule his first issue.

## DEFENSIVE INSTRUCTION

In his second issue, Amaro contends that he was entitled to an instruction on the defense of consent because, as a police officer, Rios "knew the conduct was a risk of his occupation" and knew that Amaro believed that Rios consented to the conduct.

The victim's effective consent or the actor's reasonable belief that the victim consented to the actor's conduct is a defense to aggravated assault if the victim knew the conduct was a risk of his occupation. TEX. PEN. CODE ANN. § 22.06(a)(2)(A) (Vernon Supp. 2008). Amaro points to Rios's testimony that he heard Amaro's vehicle approaching, was familiar with the risks of being a police officer, such as someone pointing a gun at him, was wearing a ballistic vest, warned Amaro that he would be arrested at gunpoint, and had unholstered his weapon upon Amaro's arrival.

Two courts have addressed section 22.06 in the context of public servants. In *Tanksley v. State*, 656 S.W.2d 194 (Tex. Civ. App.—Austin 1983, no writ), Tanksley was charged with aggravated assault by threatening to stab a jailer in the eye. *See Tanksley*, 656 S.W.2d at 195. The trial court denied Tanksley's request for an instruction that the jailer knew Tanksley's conduct was a risk of his occupation, "'by the nature of the

jailer's employment he consented as a matter of law to any assault as a risk of his occupation.'" *Id*. The Austin Court held:

> There is no evidence that the jailer consented in fact to appellant's conduct, whether by express words or by other means indicating an apparent consent. The provisions of § 22.06 quoted above do not *define* effective consent to mean engaging in an occupation having a risk of assault, as appellant apparently contends. Rather, the victim's express or apparent assent to an accused's conduct is effective as a defense *if* the victim knew that such conduct was a risk of his occupation. There being no assent by the jailer to the conduct of appellant in the present case, § 22.06 was not applicable and appellant was not entitled to a requested instruction thereunder. Appellant does not contend that he reasonably believed the jailer consented to the assault.

*Id*. at 196-97.

In *Camp v. State*, 13 S.W.3d 805 (Tex. App.—Eastland 2000, no pet.), the trial court denied Camp's request for an instruction that "it is a defense to a prosecution for aggravated assault of a public servant that the victim of the aggravated assault effectively consented to the actions of the defendant, or that the defendant reasonably believed that the victim had consented to his actions." *Camp*, 13 S.W.3d at 807. The Eastland Court held:

> We agree with the holding in Tanksley that Section 22.06 should not be read to define "effective consent to mean engaging in an occupation having a risk of assault." This would not be consistent with other provisions of the Penal Code which protect public servants who are discharging their official duties. We note that the opinion in Tanksley agreed that the public servant's "express or apparent consent" would have been effective as a defense if he knew that such conduct was a risk of his occupation. As in Tanksley, there was no "express or apparent consent" by the public servants to appellant's conduct in trying to ram their vehicles; consequently, it does not matter if they knew that such conduct was a risk of their occupation.

Each of the officers testified that they did not give "express consent" to appellant's conduct, and there is no proof of "apparent consent" because there is no showing that appellant had a reasonable belief that the officers gave their consent to his conduct.

*Id*. at 807.

We agree with *Tanksley* and *Camp* that "Section 22.06 should not be read to define 'effective consent to mean engaging in an occupation having a risk of assault.'" *Id*; *see Tanksley*, 656 S.W.2d at 196-97. Neither does the record contain any evidence suggesting that Rios consented to Amaro's conduct or that Amaro had a reasonable belief that Rios consented to his conduct. We overrule issue two.

The judgment is affirmed.

FELIPE REYNA
Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Justice Davis
Affirmed
Opinion delivered and filed May 6, 2009
Publish
[CRPM]