COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 


 
 
  
 CLINTON W. AIRHEART,
  
                            
 Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                            
 Appellee.
 
 
   §
   §
   §
   §
   §
   §
   §
   §
   §
   §
  
 
 
  
                   No. 08-11-00037-CR
  
 Appeal from the
  
 Criminal
 District Court No. 2
  
 of Tarrant
 County, Texas 
  
 (TC# 1215028R) 
  
 
 


                                                                  O
P I N I O N

Clinton W.
Airheart appeals his conviction for aggravated assault on a public servant, a first
degree felony.  Appellant brings eleven issues
arguing that the trial court erred:  (1)
in denying Appellant’s motion for a recess; (2) through (6) in admitting five
exhibits because the admission violates provisions of the Texas Rules of
Evidence; (7) in overruling an objection to inadmissible testimony under the
Texas Rules of Evidence; (8) by not submitting a lesser-included offense of
reckless conduct; (9) in rejecting Appellant’s application paragraph
incorporating voluntary conduct.  In
Issue Ten, he contends that the prosecutor engaged in improper jury argument, and
in Issue Eleven that the evidence is legally insufficient.  We affirm.[1]

PROCEDURAL BACKGROUND

            Appellant was
indicted on one count of aggravated assault on a public servant and entered a
plea of not guilty on December 7, 2010.  The jury found Appellant guilty of aggravated
assault on a public servant following a five-day trial.  During the punishment phase, Appellant
pleaded true to a repeat offender allegation.[2]  The jury assessed his punishment at life
imprisonment in the Institutional Division of the Texas Department of Criminal
Justice.  Appellant timely appealed his
conviction and sentence.

FACTUAL
BACKGROUND

On June 5, 2009, Starlet
Airheart (“Mrs. Airheart”) phoned 911 to report that she had been assaulted by
Appellant.  Appellant dumped her purse on
her head while she was sleeping, which was followed by an argument that developed
into physical violence, including Appellant choking Mrs. Airheart several
times.  Mrs. Airheart left their
residence, located at 4709 Forbes Street, went to a neighbor’s house, called
the police, and then waited outside with her children.

Officer J. B.
McGinty, Jr., (“Officer McGinty”) was dispatched to the Forbes Street residence
on a domestic disturbance call, arriving at approximately 8 a.m.  Officer McGinty was driving a marked patrol
car and was wearing a police uniform.  He
spoke with Mrs. Airheart and noticed she had visible injuries.  Officer McGinty called for an assist unit
based on a number of factors including that the door was secured, he could not
get inside, did not have a family violence packet with him, and needed a
camera.  Officer Sean Kelm (“Officer
Kelm”) was dispatched as the assist unit, arriving in a marked police car and wearing
his police uniform.  When Officer Kelm
arrived, Officer McGinty relayed to him the information provided by Mrs.
Airheart, including her concern that the Appellant might have access to a
“pistol” and an “AK-47.”

The officers
knocked on the front door and announced “Fort Worth police” several times.  When no one answered, Mrs. Airheart retrieved
a key and unlocked the front door of the residence, and the officers entered
the residence with their weapons drawn.  The
officers moved through the residence, briefly looking in each room for
Appellant.  When they reached the back
bedroom, Officer McGinty observed a mattress move, indicating someone was
hiding there.  Calling from the hallway
for the person to come out, Appellant eventually emerged from under the
mattress.  Officer Kelm ordered Appellant
to stand up and put his hands in the air, which Appellant complied with.

As Officer Kelm
entered the bedroom to handcuff Appellant, Officer McGinty noticed that
Appellant had a gun stuffed in his waistband, and yelled “gun.”  Appellant drew the gun, pulling it from his
waistband and pointing it at the officers. 
Officer McGinty was not sure who fired first.  Officer Kelm testified that Appellant fired
first.  The record is clear that
Appellant fired at the officers, and that both officers fired at Appellant.  Officer Kelm testified that he saw the muzzle
blast and felt the heat from the blast on the left side of his face.  Officer McGinty thought Officer Kelm had been
shot.  Appellant was shot in the abdomen
and fell to the floor.

While Appellant
was on the floor, the officers ordered him to put his hands where they could
see them.  Appellant complied, and was
handcuffed by the officers.  The officers
found Appellant’s gun beneath his body and secured the weapon.  The officers dragged Appellant to the living
room and called for an ambulance and additional officers.  During their investigation following the
shooting, crime scene officers discovered an AK-47 in a sleeve of a jacket, and
bullets for it in a shoebox, in a closet in the back bedroom where the shooting
took place.

DISCUSSION

Appellant presents
eleven issues, seeking to have the Court reverse the judgment and enter a
judgment of acquittal, remand the cause for a new trial on both guilt/innocence
and punishment, or remand for a new trial on punishment.

Motion for Continuance

In Appellant’s first
issue, he argues that the trial court erred by not granting him a recess during
the penalty trial until after the effects of medications he had been given the
night previous wore off.  Appellant
argues that he was extremely drowsy, nauseated, and was unable to participate
in the trial.  Appellant asserts that the
jury would have seen this and drawn any number of negative inferences against
Appellant.  The State contends that
Appellant failed to preserve this issue because there was no written motion for
a continuance, or in the alternative, that the trial court did not abuse its
discretion in denying the request.

On the start of
the last day of the punishment trial, December 10, 2010, outside the presence
of the jury, Appellant’s counsel made an oral motion for a recess requesting a
continuance until either later the same day or until the following Monday, as
Appellant was “feeling sick” from the effects of the medication that the nurse had
given him the night before. In response to questions posed by the trial court
while under oath, Appellant testified he was being denied his right to counsel
and ability to confer with counsel due to his “physical limitation.”  Appellant’s counsel advised the court that
Appellant did not intend to testify.  There was no evidence presented indicating
what type of medication was given to Appellant, when it had been given, the
dosage, or why it had been given.  The
trial court denied the continuance, but stated that “if [Appellant] gets to the
point that he feels nauseated or something like that, I want him to notify the
bailiff and we’ll provide something for him in that event.”

Appellant argues
that by “sitting before the jury while extremely drowsy, nauseated, and sick”
and that the jury “might have concluded” that the Appellant “had been medicated
for a reason.”  Furthermore, that reason
would be prejudicial to Appellant, “because he had been violent or was
potentially violent and needed sedation for purposes of the remaining punishment
proceedings.”  Appellant argues that this
is “comparable to displaying a defendant before the jury in shackles,”
particularly in light of testimony from the day when Appellant’s maladaptive
behavior was discussed.

Nothing in the
record shows that this argument was raised before the trial court.  Appellant has failed to preserve this due
process complaint for review by this Court. 
See Tex.R.App.P. 33.1; Dreyer
v. Greene, 871 S.W.2d 697, 698 (Tex. 1993)(rejecting due process complaint
when party failed to raise it at trial); Sano
v. Greenlee, 2011 WL 2436737, at *8 (Tex.App.--Fort Worth June 16, 2011, no
pet.)(mem. op.)(same).

However, assuming arguendo, that the issue remains ripe
for appellate review, the Texas Code of Criminal Procedure permits a continuance
only upon a written motion sworn by the State or the defendant.  Tex.Code
Crim.Proc.Ann. arts. 29.03, 29.08 (West 2006).  The Court of Criminal Appeals has stated, “[a]
motion for continuance not in writing and not sworn preserves nothing for review.”
 Dewberry
v. State, 4 S.W.3d 735, 755 (Tex.Crim.App. 1999), cert. denied, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000).
 Appellant’s argument here is that his
request was a motion for a recess based on equitable grounds.  See
Munoz v. State, 24 S.W.3d 427, 431 (Tex.App.--Corpus Christi 2000, no
pet.).  The Munoz court notes that case law supports such a request, and that
such a motion, “based on equitable grounds rather than statutory grounds, is
entirely within the sound discretion of the court, and will only call for
reversal if it is shown that the court clearly abused its discretion.”  Munoz,
24 S.W.3d at 431, citing Alvarado v.
State, 818 S.W.2d 100, 103 (Tex App.--San Antonio 1991, no pet.).  The Munoz
court notes a separate line of cases which generally, but not uniformly,
recognizes a counsel’s right to make an oral motion for a continuance which is
enforceable via the equitable powers of the court of appeals.  Munoz,
24 S.W.3d at 431.  This would require a
showing that the denial of the motion by the trial court amounts to a denial of
a fundamental principal of due process, at which point that ruling is subject
to appellate review.  Id., citing
Petrick v. State, 832 S.W.2d 767, 770-71 (Tex.App.--Houston [1st Dist.]
1992, pet. ref’d); O’Rarden v. State, 777
S.W.2d 455, 459 (Tex.App.--Dallas 1989, pet. ref’d).

As in Munoz, Appellant did not file a sworn, written
motion for a continuance.  The unsworn
oral motion made by Appellant’s trial counsel, whether a motion for a
continuance or a motion for a recess, can therefore only be based on equitable
grounds rather than statutory grounds.  Therefore the trial court’s decision will only
be overturned if there was a clear abuse of discretion.  Munoz,
24 S.W.3d at 431-32, citing Hernandez v.
State, 492 S.W.2d 466, 467 (Tex.Crim.App. 1973).

There is no
evidence that the trial court abused its discretion in this case.  The record shows that the trial court was
ready to take action should Appellant’s condition have worsened during the
proceedings.  Nothing in the record
indicates any change in Appellant’s condition following the denial of the
motion.  The record reflects a discussion
later that same morning between the judge and Appellant regarding Appellant’s
decision not to testify.  No mention was made
of Appellant’s condition at that time.  We
find no abuse of discretion in the trial court’s denial of Appellant’s motion.  Issue One is overruled.

Errors in Admitting Evidence

            Appellant’s
second through sixth issues relate to admission of State’s Exhibits 146, 147,
148, 149, and 179 on the basis that their admission violated Rules 401, 403,
and 404(b) of the Texas Rules of Evidence. 
The State argues that Appellant failed to preserve complaints regarding
these exhibits as Appellant did not object to them prior to their admission or,
alternatively, that the trial court did not abuse its discretion in admitting
the exhibits.[3]

            Exhibits
146 through 149 are photographs of the AK-47 and of items related to it, while
Exhibit 179 was the AK-47 rifle itself.  The
exhibits were introduced as part of the testimony of Officer Presney, who was
assigned to the crime scene search unit. 
Officer Presney testified that he found the AK-47 inside the sleeve of a
jacket in the closet in the back bedroom and ammunition for the weapon in a
shoebox.  He was shown Exhibits 146
through 149 and indicated that these photographs showed where the weapon and the
ammunition were found.  Following this
identification, the State offered the photographs as exhibits, at which time
counsel for Appellant objected on the grounds that their admission violated
Rules 401, 403, and 404(b).  The court
viewed the photos and overruled the objections. 
Officer Presney was shown and identified Exhibit 179, the AK-47, which was
then introduced as an exhibit, subjected to an objection from Appellant on the
same ground as above, which the court overruled.

            A
similar situation occurred in Ratliff v.
State, 320 S.W.3d 857 (Tex.App.--Fort Worth 2010, pet. ref’d).  In Ratliff,
the appellant filed a motion to suppress evidence but did not obtain a ruling
on the motion or a pretrial hearing.  The
appellant in Ratliff allowed a
detective to testify about the evidence before objecting to the admission of
the physical evidence.  The Ratliff court held that the appellant’s
failure to object at the time the detective specifically described the physical
evidence and how he obtained the evidence resulted in appellant forfeiting any
error relating to his objection to the State’s later introduction of the
evidence.  See Tex.R.App.P.
33.1; Ratliff, 320 S.W.3d at 862, citing Tell v. State, 908 S.W.2d 535,
538, 543-44 (Tex.App.--Fort Worth 1995, no pet.)(concluding that “[b]ecause
Tell failed to object at the time the ski mask was mentioned and allowed
further questions and answers before finally objecting,” he “waived any error
in the admission of the ski mask.”);
Turner v. State, 642 S.W.2d 216, 216-17 (Tex.App.--Houston [14th Dist.]
1982, no pet.)(holding that the defendant forfeited his objections at trial by
allowing the detective to testify “extensively to the arrest and the items
found in the search” where appellant did not object to the testimony but only
to five exhibits).  Here, Appellant did
not seek a ruling on his motion to suppress evidence instead he agreed to
permit the trial court to hold it in abeyance during the trial.  Appellant allowed testimony regarding the
AK-47 and associated items to proceed without objection, objecting only once to
the State attempting to introduce the physical evidence itself.  Appellant has waived any error in admission
of the AK-47 and the associated photographs.

            Even
if he had not waived error, we still find no abuse of discretion in admitting
the exhibits.  A trial court’s decision
to admit or exclude evidence is reviewed under an abuse of discretion
standard.  See De la Paz v. State, 279 S.W.3d 336, 343 (Tex.Crim.App.
2009).  A trial court abuses its
discretion when its decision lies outside the “zone of reasonable
disagreement.”  De la Paz, 279 S.W.3d at 343-44.

            As
a general matter, relevant evidence is admissible.  See
Tex.R.Evid. 402.  Evidence may be excluded despite its
relevance, however, if its probative value is substantially outweighed by the
danger of unfair prejudice, confusion of the issues, or misleading the jury, or
by considerations of undue delay, or needless presentation of cumulative
evidence.  Tex.R.Evid. 403.  An
objection under Rule 403 requires the trial court to weigh the probative value
of the evidence to determine whether it is substantially outweighed by its
potential for unfair prejudice.  Santellan v. State, 939 S.W.2d 155, 169
(Tex.Crim.App. 1997).  A Rule 403
balancing test includes consideration of several factors:  (1) the inherent probative force of the
proffered item of evidence; (2) the proponent’s need for the evidence; (3) the
evidence’s tendency lead to a decision on an improper basis; (4) any tendency
of the evidence to confuse or distract the jury from the main issues in the
case; (5) the tendency of the evidence to be given undue weight by a jury that
has not been equipped to evaluate the probative force of the evidence; and (6)
the likelihood that the presentation of the evidence will consume an inordinate
amount of time, or be cumulative of evidence already admitted.  Gigliobianco
v. State, 210 S.W.3d 637, 641-42 n.8 (Tex.Crim.App. 2006).

1.      Probative
Value and Need

With regard to
both the photographs and the weapon, the trial court could reasonably have
concluded that the evidence was probative to show that Appellant had access to
an AK-47, which was located in a closet in the same room as Appellant.[4]

 

2.      Unfair
Prejudice

Appellant argues
that the exhibits had the tendency to incite the jury into deciding the case on
an improper basis, contending he was not being tried for illegally possessing
an assault rifle or with threatening anyone with an assault rifle.  While the exhibits were certainly prejudicial
to Appellant, the trial court could reasonably have concluded that the
prejudice was not so unfair as to warrant exclusion.

3.      Confusion
of the Issues

As was discussed
in factor one, supra, the evidence presented by the State was consistent with
the theory that Appellant had access to an AK-47 in the same room he was found
and where he opened fire on police officers. 
There is no indication in the record that the challenged exhibits
created or added any confusion regarding the events leading up to and following
the shooting.  Accordingly, the trial
court could reasonably have concluded that the evidence had very little
tendency to confuse, and that the evidence assisted the jury in understanding
the entirety of the circumstances surrounding the shooting.

4.      Misleading
the Jury

Similar to our
analysis under factors one and three, due to the nature and content of the
evidence at issue, the trial court could reasonably have concluded that there
was little danger the exhibits would mislead the jury.

5.      Undue
Delay and Needless Presentation of Cumulative Evidence

As is evident from
the record, the State presented evidence regarding the AK-47 during the
guilt-innocence phase of trial through multiple witnesses, including Mrs.
Airheart and crime scene officers. 
However, in light of the probative value of the exhibits, the trial
court could reasonably have concluded that there was no undue delay implicated
by their presentation and could reasonably have concluded that to the extent
the exhibits were cumulative, their presentation was necessary.

            In
sum, having considered the Rule 403 factors as they relate to the challenged items
of evidence, we conclude that the trial court could reasonably have concluded
that the probative value of the evidence was not substantially outweighed by
the potential for undue prejudice. 
Therefore, the trial court’s decision to admit the evidence over Appellant’s
objection was not an abuse of discretion in either instance.[5]  Issues Two through Six are overruled.

Error in Admission of Statement

            Appellant’s
seventh issue asserts that the trial court erred in overruling his objection to
a statement made by Mrs. Airheart that he argues was inadmissible under Rules
401, 403, and 404(b) of the Texas Rules of Evidence.  The State argues that the Appellant has
failed to preserve this issue for review and even if it was properly preserved,
that the court did not abuse its discretion in overruling the objection.  The State argues that Appellant’s objection
was untimely, as the objection was not raised until the prosecutor had
proceeded into asking the next question and therefore, the objection was not
made at the “first opportunity” or “as soon as the ground for complaint is
apparent or should be apparent.”  Aguilar v. State, 26 S.W.3d 901, 905-06
(Tex.Crim.App. 2000).  The State cites to
Lagrone v. State, 942 S.W.2d 602, 618
(Tex.Crim.App.), cert. denied, 522
U.S. 917, 118 S.Ct. 305, 139 L.Ed.2d 235 (1997), in support of their argument
that the objection was untimely and therefore waived.  In Lagrone,
the prosecutor asked two questions then passed the witness before the defense
counsel raised an objection to both questions.  The Court of Criminal Appeals found that the
objection there was untimely and therefore the error was not preserved.  We agree.

            Mrs.
Airheart testified that before the police entered the residence, she heard
noises coming from inside the house but did not know what the noises were at
the time.  She then testified that when
the police allowed her back inside the house she found that Appellant had
broken all the pictures of her children. 
As the prosecutor began asking his next question, counsel for Appellant
objected on the basis of Rules 401, 403, and 404(b) and the trial court
overruled the objection.  Here, the record
reflects that the State asked a series of four questions regarding the noises,
each of which were asked and answered, and was in the process of asking a fifth
question when the objection was made. 
The objection was not timely and the record reflects no good cause
offered to explain why there was a delay in making the objection.  Therefore, nothing is preserved for our
review.  Lagrone, 942 S.W.2d at 618.  See also Polk v. State, 729 S.W.2d 749,
753 (Tex.Crim.App. 1987).  Appellant’s
seventh issue is overruled.

Even assuming the
error was preserved, we find no harm.  Rule 44.2(b) of the Texas Rules of Appellate
Procedure provides that “[a]ny other error, defect, irregularity, or variance
that does not affect substantial rights must be disregarded.”  Tex.R.App.P.
44.2(b).  A conviction should not be
overturned if the appellate court, after examining the record as whole, has
fair assurance that the error did not influence the jury, or had but a slight
effect.  See Ex parte Martinez, 330 S.W.3d 891, 903
(Tex.Crim.App. 2011).  In examining the
record, pointing out that Appellant broke pictures of Mrs. Airheart’s children
was not the likely “tipping point” which led to Appellant’s conviction for
aggravated assault on a public servant. 
The testimony explained the entirety of the circumstances, specifically
the domestic violence call, which precipitated the police involvement that
morning.[6]
 The other evidence submitted during the
course of the trial overwhelmingly supported the jury’s determination of guilt.
 Therefore, even assuming Appellant’s
objection was timely made, any error was harmless.  Appellant’s seventh issue is overruled.

Lesser Included Offense

            Appellant’s
eighth issue argues that the trial court erred by not submitting the lesser
included offense of reckless conduct.  On
the final day of the trial, Appellant requested that the charge include the
lesser-included offense of deadly conduct[7]
and submitted a proposed charge, which the court rejected.  Appellant claims that the error was harmful
because it left the jury no alternative but to convict Appellant of the charged
offense.  Appellant cites to Bell v. State, 693 S.W.2d 434, 436, 439
(Tex.Crim.App. 1985)(identifying Section 22.05 as reckless conduct) in support
of his argument that deadly conduct is a lesser included offense of aggravated
assault.

            In
Bell, the Court of Criminal Appeals
noted that “[w]hether one offense bears such a relationship to the offense
charged so as to constitute a lesser included offense” is determined on a
case-by-case basis.  Id. at 436.  “An allegation
that an offense has been committed in one way may include a lesser offense,
while an allegation that the offense was committed in another way would not
include the lesser offense.”

            Courts
must perform a two-step analysis in determining whether to submit a
lesser-included charge:  (1) the
requested charge is for a lesser-included offense of the charged offense; and
(2) there is some evidence that, if the defendant is guilty, he is guilty only
of the lesser offense.  Amaro v. State, 287 S.W.3d 825, 827
(Tex.App.--Waco 2009, pet. ref’d).  The first
prong is determined from a review of the pleadings.  Performed by comparing the statutory elements
of the offense charged in the indictment with the elements of the requested
lesser offense, this determination is one of law and does not depend on the
evidence presented at trial.  If the
first requirement is met, the second prong requires a review of the evidence to
determine if there is any evidence that, if Appellant is guilty, he is guilty
of only the lesser offense.  See Hall v. State, 225 S.W.3d 524,
535-36 (Tex.Crim.App. 2007).

            We
first turn to the language of the indictment for aggravated assault against a
public servant.[8]  The indictment charged that Appellant:

[D]id intentionally or knowingly
threaten imminent bodily injury to S. Kelm, a public servant, to-wit: an employee
or officer of government, namely a police officer for the city of Fort Worth,
while S. Kelm was lawfully discharging an official duty and the defendant knew
that S. Kelm was a public servant, and the defendant did use or exhibit a
deadly weapon during the commission of the assault, to-wit: a firearm.

 

            An
offense is a lesser included offense if:  (1) it is established by proof of the same or
less than all the facts required to establish the commission of the offense
charged; (2) it differs from the offense charged only in the respect that a
less serious injury or risk of injury to the same person, property, or public
interest suffices to establish its commission; (3) it differs from the offense
charged only in the respect that a less culpable mental state suffices to
establish its commission; or (4) it consists of an attempt to commit the
offense charged or an otherwise included offense.  Tex.Code
Crim.Proc.Ann. art. 37.09 (West 2006).

Here the indictment
alleges the following statutory elements of aggravated assault on a public
servant:  (1) Appellant; (2)
intentionally or knowingly; (3) threatened Officer Kelm with imminent bodily
injury; (4) while exhibiting or using a deadly weapon; and (5) knew that
Officer Kelm was a public servant lawfully discharging an official duty.  See Tex. Penal Code Ann. §§ 22.01(a)(2),
22.02(a)(2), (b)(2)(B), (c)(West 2011).  The
statutory elements of deadly conduct are:  (1) a person (2) recklessly (3) engages in
conduct that places another in imminent danger of serious bodily injury.  Tex.Penal
Code Ann. § 22.05(a)(West 2011).  Recklessness
and danger are presumed if the actor knowingly pointed a firearm at or in the
direction of another.  Id. at § 22.05(c).

The Amaro court performed a comparison of Bell, which held that deadly conduct is
a lesser-included offense of aggravated assault, with Miller v. State, 86 S.W.3d 663 (Tex.App.--Amarillo 2002, pet. ref’d),
where the court held that deadly conduct was not, based on the indictment, a
lesser-included offense of aggravated assault against a public servant.[9]  The Amaro
court questioned Miller, concluded that Bell was more persuasive and held that deadly conduct is a
lesser-included offense of aggravated assault on a public servant “under the
circumstances of this case because it is established by proof of the same facts
required to establish the commission of aggravated assault on a public servant
by exhibiting a deadly weapon.”  Amaro, 286 S.W.3d at 829.  We find that the first prong of the Amaro test is met in this case.

 

Turning to the
second prong of the analysis, if there is some evidence in the record that
would permit a jury to rationally conclude that Appellant is guilty and “guilty
only of the lesser-included offense,”
then Appellant would be entitled to a deadly conduct instruction.  Amaro,
286 S.W.3d at 830, citing Hall, 225
S.W.3d at 536 [Emphasis added]. 
Appellant argues that Officer Kelm, as a public servant, is necessarily
also an “individual” and that Appellant discharged his firearm at an “individual”
named Sean Kelm.  We are not persuaded by
this argument.  The record clearly
reflects that Appellant knowingly and intentionally exhibited or used a firearm
by pointing and firing it at two uniformed Fort Worth police officers who announced
their presence and were acting in accordance with the law.  The testimony at trial showed that Appellant
deliberately drew a pistol when Officer McGinty spotted it and shouted “gun,”
pointed it at the officers, then fired at them. 
The record contains no evidence that shows that Appellant is guilty only of deadly conduct.  See
Amaro, 287 S.W.3d at 830-31.  See also Bignall v. State, 887 S.W.2d 21, 24 (Tex.Crim.App. 1994)(“If a
defendant either presents evidence that he committed no offense or presents no
evidence, and there is no evidence otherwise showing he is guilty only of a
lesser included offense, then a charge on a lesser included offense is not
required.”).  Because the second prong is
not met, Appellant was not entitled to an instruction on deadly conduct and we
overrule Appellant’s eighth issue.

Application Paragraph

The ninth issue
asserted by Appellant is that the trial court erred in rejecting Appellant’s
application paragraph incorporating voluntary conduct.  The trial court included the instruction
requested by Appellant regarding voluntary conduct, but not the application
paragraph incorporating the same.

Appellant
requested the following instruction be included:

Therefore, if you
believe from the evidence beyond a reasonable doubt that on the occasion in
question the defendant . . . did threaten a public servant . . . with imminent
bodily injury and that he did use or exhibit a deadly weapon, to-wit:  a firearm, as alleged in the indictment, but
you further believe from the evidence, or you have a reasonable doubt thereof,
that the threat was the result of an accident and was not the voluntary act of
conduct of the defendant, you will acquit the defendant and say by your verdict
‘Not Guilty.’

 

Appellant contends that the trial
court agreed that voluntary conduct was the law that applied to the case but
declined to incorporate voluntary conduct into the application paragraph, which
was error.  Appellant argues that because
the record is not clear as to who fired first, that “[i]t is possible Appellant
returned fire as an involuntary reflex to being fired upon.”

Appellate courts
undertake a two-step process when reviewing charge errors.  First, the court must determine whether error
exists in the charge, and second, the court must determine whether sufficient
harm resulted from the error such to require reversal.  Abdnor
v. State, 871 S.W.2d 726, 731-32 (Tex.Crim.App. 1994).

The record does
not reflect that Appellant objected to the jury charge,[10]
and therefore failed to preserve error. 
Because of this failure, Appellant would have to show he suffered
egregious harm.  Abdnor, 871 S.W.2d at 732, citing
Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984).

A person “commits
an offense only if he voluntarily engages in conduct.”  Tex.Penal
Code Ann. § 6.01(a).  “Voluntariness,”
as used in Section 6.01(a):

[R]efers only to one’s own physical
body movements. If those physical movements are the nonvolitional result of someone
else’s act, are set in motion by some independent non-human force, are caused
by a physical reflex or convulsion, or are the product of unconsciousness,
hypnosis or other nonvolitional impetus, that movement is not voluntary.

 

Rogers
v. State, 105 S.W.3d 630, 638 (Tex.Crim.App. 2003).

The Rogers court notes that both the Model
Penal Code and the Practice Commentary to the 1974 Texas Penal Code focused
that a “voluntary act” does not necessarily require the ultimate act (e.g.,
pulling a trigger), “but only that criminal responsibility for the harm must ‘include
an act’ that is voluntary (e.g., pulling the gun, pointing the gun, or cocking
the hammer).”  Rogers, 105 S.W. 3d at 638, citing
Model Penal Code § 2.01, Comment at 217. 
Involuntary conduct is a defense to prosecution.  Trujillo
v. State, 227 S.W.3d 164, 169 (Tex.App.--Houston [1st Dist.] 2006, pet. ref’d).  To be entitled to a charge on the issue of
voluntariness, “there must be evidence of an independent event, such as the
conduct of a third party, that could have precipitated the incident.”  Rhodes
v. State, 997 S.W.2d 692, 694 (Tex.App.--Texarkana 1999, pet. ref’d).

            We
have found no evidence in the record, and Appellant has failed to direct us to
any, which suggests that his actions were somehow nonvolitional, the result of
reflex, convulsion, or some other impetus. 
The record reflects that Appellant raised his arm, pointed a firearm at
uniformed police officers, and fired it. 
The record establishes that Appellant’s firearm required more than ten
pounds of pressure to pull the trigger. 
No evidence was introduced to suggest that Appellant’s actions were
anything other than “voluntary.”  See e.g., Rogers, 105 S.W.3d at 638-39; Gokey
v. State, 314 S.W.3d 63, 68-9 (Tex.App.--San Antonio 2010, pet. ref’d,
untimely filed)(finding that defendant acted “voluntarily” while swinging knife
at deputies and where no evidence was introduced that he did not act
voluntarily).  “In the absence of
evidence that an appellant’s conduct was involuntary, such conduct is voluntary
as a matter of law, and no jury instruction is required.”  Rhodes,
997 S.W.2d at 695, citing Moss v. State,
850 S.W.2d 788, 795 (Tex.App.--Houston [14th Dist.] 1993, pet. ref’d).  Because no evidence was introduced showing
that Appellant’s conduct was involuntary, his conduct is voluntary as a matter
of law and therefore, no jury instruction was required.  Further, Appellant has failed to show any
harm given the inclusion of Appellant voluntary conduct instruction.  Appellant’s ninth issue is overruled.

Improper Jury Argument

            Appellant’s
tenth issue is that the prosecutor engaged in improper jury argument during the
punishment trial.  Appellant acknowledges
that there was no objection made at trial to the prosecutor’s statement.  A defendant’s failure to object to a jury
argument forfeits his right to complaint about the argument on appeal.  Cockrell
v. State, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996), cert. denied, 520 U.S. 1173, 117 S.Ct. 1442, 137 L.Ed.2d 548
(1997); see also Threadgill v. State,
146 S.W.3d 654, 670 (Tex.Crim.App. 2004)(reaffirming Cockrell).

            Trial
courts have a great deal of discretion to control the scope of closing arguments.  Lemos
v. State, 130 S.W.3d 888, 892 (Tex.App.--El Paso 2004, no pet.).  Counsel may draw reasonable, fair, and
legitimate inferences from the evidence presented at trial.  See
Allridge v. State, 762 S.W.2d 146, 156 (Tex.Crim.App. 1988).  The applicable legal standard of review is whether,
in light of the record as a whole, there is a reasonable possibility the
improper argument might have contributed to Appellant’s conviction.  See
Wilson v. State, 938 S.W.2d 57, 61 (Tex.Crim.App. 1996).

            In
determining whether the State engaged in improper jury argument, we consider
the entire argument presented, not isolated sentences.  Rodriguez
v. State, 90 S.W.3d 340, 364 (Tex.App.--El Paso 2001, pet. ref’d).  Generally, proper jury argument consists
of:  (1) summation of evidence; (2)
reasonable deductions from the evidence; (3) answer to argument of opposing
counsel; and (4) a plea for law enforcement. 
Jackson v. State, 17 S.W.3d
664, 673 (Tex.Crim.App. 2000); Morales v.
State, 11 S.W.3d 460, 463 (Tex.App.--El Paso 2000, pet. ref’d).

            Under
most circumstances, improper jury argument may be cured by an instruction to
disregard, unless “in light of the record as a whole it was extreme or
manifestly improper, violative of a mandatory statute, or injected new facts
harmful to the accused.”  Hawkins v. State, 135 S.W.3d 72, 75
(Tex.Crim.App. 2004), citing Cooks v.
State, 844 S.W.2d 697, 727 (Tex.Crim.App. 1992), cert. denied, 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993).

            To
preserve error regarding improper jury argument, a party is required to
continue to object each time improper jury argument is offered.  Dickerson
v. State, 866 S.W.2d 696, 699 (Tex.App.--Houston [1st Dist.] 1993, pet. ref’d).  A defendant ordinarily should:  (1) contemporaneously object to the
statement; (2) request an instruction that the jury disregard the statement if
the objection is sustained; and (3) move for a mistrial if the instruction is
granted.  Cooks, 844 S.W.2d at 727-28. 
However, while this sequence is not essential to preserve complaints for
appellate review, the essential requirement is a timely, specific request that the
trial court refuses.  Young v. State, 137 S.W.3d 65, 69
(Tex.Crim.App. 2004).  “[A]n event that
could have been prevented by timely objection or cured by instruction to the
jury will not lead an appellate court to reverse a judgment on an appeal by the
party who did not request there lesser remedies in the trial court.”  Young,
137 S.W.3d at 70.  Moreover, the
appellate complaint challenging the motion for mistrial must comport with the
motion made at trial.  Braxton v. State, 909 S.W.2d 912, 918
(Tex.Crim.App. 1995).  The mistrial
motion must be timely, that is it must be made as soon as the grounds for the
mistrial become apparent.  Griggs v. State, 213 S.W.3d 923, 927
(Tex.Crim.App. 2007).

            Here
counsel did not lodge a single objection to the complained arguments.  Appellant did not request an instruction from
the trial court that the jury be ordered to disregard the prosecutor’s
statements, nor did he make a motion for mistrial.  Under these circumstances, we cannot say that
Appellant preserved these complaints sufficient for our review.

            However,
had we determined otherwise, we would be obligated to decide whether Appellant’s
substantial rights were harmed by the arguments made by the State.  See
Casey v. State, 215 S.W.3d 870, 885 (Tex.Crim.App. 2007).  A substantial right is affected when the
error had substantial and injurious effect or influence on the jury’s
verdict.  Id.

            As
noted above, where closing argument exceeds the permissible bounds of approved
areas, it will not constitute reversible error unless, in light of the record
as a whole, the argument is extreme or manifestly improper, violative of a
mandatory statute, or injects new facts harmful to the accused into the trial
proceeding.  Wesbrook v. State, 29 S.W.3d 103, 115 (Tex.Crim.App. 2000), citing Todd v. State, 598 S.W.2d 286,
296-97 (Tex.Crim.App. 1980).  “The
remarks must have been a willful and calculated effort on the part of the State
to deprive appellant of a fair and impartial trial.”  Wesbrook,
29 S.W.3d at 115, citing Cantu v. State,
939 S.W.2d 627, 633 (Tex.Crim.App.), cert.
denied, 522 U.S. 994, 118 S.Ct. 557, 139 L.Ed.2d 399 (1997).

            When
analyzing any harm that may have been caused by an improper jury argument, we
examine the following factors:  (1) the
severity of the misconduct (the magnitude of the prejudicial effect of the
prosecutor’s remarks); (2) measures adopted to cure the misconduct (the
efficacy of any cautionary instruction by the judge); and (3) the certainty of
conviction absent the misconduct (the strength of the evidence supporting the
conviction).  Ramon v. State, 159 S.W.3d 927, 929 (Tex.Crim.App. 2004), citing Mosley v. State, 983 S.W.2d 249,
259 (Tex.Crim.App. 1998)(op. on reh’g), cert.
denied, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999).

            We
conclude, after considering the entire argument presented, as well as the
record as a whole, that the remarks made by the prosecutor were a proper plea
to law enforcement.  Essentially, the
prosecutor’s remarks were not a willful and calculated effort to deprive
Appellant of a fair and impartial trial.

            No
cautionary instruction, or instruction to disregard was given to the jury
because Appellant never made any such request. 
Finally, the evidence to support the jury’s verdict was substantial,
even had the comments never been made.  Appellant’s
tenth issue is overruled. 

Sufficiency of the Evidence

In his final issue,
Appellant argues that the evidence is legally insufficient to support a
conviction.

            A court reviewing whether the
evidence is sufficient to support a conviction is guided by the
“legal-sufficiency standard,” set out in Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.Ed.2d 560
(1979); see Brooks v. State, 323
S.W.3d 893, 899 (Tex.Crim.App. 2010)(upholding legal-sufficiency test as
appropriate method for review of sufficiency of evidence to support
verdict.  The Criminal Court of Appeals
characterized the legal-sufficiency test as follows:  “Considering all of the evidence in the light
most favorable to the verdict, was a jury rationally justified in finding guilt
beyond a reasonable doubt.”  Brooks, 323 S.W.3d at 899, 902, citing Jackson, 443 U.S. at 319, 99 S.Ct. at 2781.  This standard incorporates the recognition
that “the jury is the sole judge of a witness’s credibility, and the weight to
be given the testimony.”  Brooks, 323 S.W.3d at 902, citing Lancon v. State, 253 S.W.2d 699, 707 (Tex.Crim.App. 2008).  When performing a legal sufficiency review, a
reviewing court does not sit as a “thirteenth juror,” re-evaluating the weight
and credibility of the evidence and thus, substituting our judgment for that of
the fact finder.  Brown v. State, 2004 WL 1944722, at *4 (Tex.App.--Fort
Worth Aug. 30, 2004, no pet.)(mem. op., not designated for publication), citing Dewberry, 4 S.W.3d at 740.

Aggravated assault by threat is a conduct-oriented offense
as opposed to result oriented. Landrian
v. State, 268 S.W.3d 532, 540 (Tex.Crim.App. 2008); Dolkart v. State, 197 S.W.3d 887, 893 (Tex.App.--Dallas 2006, pet.
ref’d).  A person acts “intentionally”
“with respect to the nature of his conduct . . . when it is his conscious
objective or desire to engage in the conduct . . . .”  Tex.Penal
Code Ann. § 6.03(a).  A person
acts “knowingly” “with respect to the nature of his conduct or to circumstances
surrounding his conduct when he is aware of the nature of his conduct or that
the circumstances exist.”  Id. at § 6.03(b).  Intent or knowledge may be inferred from acts,
words, and conduct.  Hart v. State, 89 S.W.3d 61, 64 (Tex.Crim.App. 2002), quoting Manrique v. State, 994 S.W.2d 640, 649 (Tex.Crim.App. 1999).  An actor is presumed to have known the person
assaulted was a public servant if the person was wearing a distinctive uniform
or badge indicating the person’s employment as a public servant.  Tex.Penal
Code Ann. § 22.02(c).  See
Sherber v. State, 2011 WL 4389614, at *4 (Tex.App.--Beaumont Sept. 21,
2011, no pet.)(mem. op., not designated for publication)(citing same in
performing legal-sufficiency analysis where defendant was charged with
aggravated assault against a public servant).

Appellant contends that the evidence shows that he “acted
with a ‘gross deviation from the standard of care that an ordinary person would
exercise under all the circumstances as viewed from the actor’s standpoint,’”[11]
and that his actions in “[p]ulling a gun from his waistband and then firing his
weapon while two police officers were trying to arrest him was reckless
conduct.”  The jury heard testimony that
both officers were in full uniform and identified themselves as Fort Worth
police officers.  The jury also heard
testimony that Officer McGinty yelled “gun” upon noticing a pistol in
Appellant’s waistband, that Appellant drew the gun from his waistband and
pointed it at the officers, and that Appellant fired at the officers.  Both officers fired at Appellant.  Officer Kelm testified that he saw the muzzle
blast and felt the heat from the blast on the left side of his face.  As a trier of fact, the jury could reasonably
conclude that Appellant intentionally or knowingly threatened Officer Kelm with
imminent bodily injury and could infer that Appellant, seeing both officers in
uniform, knew that Officer Kelm was a public servant.  See Gokey v. State,
314 S.W.3d 63, 67 (Tex.App.--San Antonio 2010, pet. ref’d, untimely filed)(Section
22.2(c) applied where officer wore a badge and uniform and drove a marked
patrol car, but even absent the presumption, the jury could infer that if Gokey
and the officer faced each other, Gokey knew the officer was a public servant);
see also Anderson v. State, 11 S.W.3d
369, 375-76 (Tex.App.--Houston [1st Dist.] 2000, pet. ref’d)(“Aiming a deadly
weapon at a supposed victim is sufficient evidence of a threat to sustain an
aggravated assault conviction.”).

Viewing the evidence in the light most favorable to the
verdict, the jury was rationally justified in determining that Appellant
committed aggravated assault against a public servant beyond a reasonable doubt.  See
Jackson, 443 U.S. at 319, 99 S.Ct. at
2789; Hooper v. State, 214 S.W.3d 9, 13
(Tex.Crim.App. 2007); Tex.Penal Code
Ann. §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B).  We overrule Appellant’s final issue.

CONCLUSION

Having overruled each
of Appellant’s issues, we affirm the trial court=s
judgment.

 

April 25, 2012

                                                                        CHRISTOPHER
ANTCLIFF, Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

 

(Do Not Publish)











[1] This case was transferred from the Second Court of
Appeals to this Court pursuant to a docket equalization order entered by the
Texas Supreme Court.   See Tex.Gov’t Code Ann. § 73.001 (West
2005).   We have applied precedent of the Fort Worth Court of Appeals.  
See Tex.R.App.P. 41.3.

 





[2] Appellant had prior
convictions for burglary of a habitation, evading arrest, driving while
intoxicated, driving with license suspended, assault, possession of a
controlled substance, theft of property $500 to $1500, theft of service or
property $50 to $500, and forgery.  At
the time of his arrest, Appellant had a warrant for his arrest issued after
Appellant violated conditions of pretrial bond for another theft offense.





[3] During a pretrial hearing,
counsel for Appellant asserted a general Motion to Suppress seeking to suppress
all evidence obtained as being obtained without a search warrant.  The trial court held it in abeyance, based on
both counsels advising that the motion can be handled through the course of the
trial.  No ruling was obtained regarding
this motion.





[4] Indeed, the evidence was
relevant given the fact that Mrs. Airheart had informed the police officers
that Appellant did have access to a pistol and an AK-47.





[5] Having concluded that the
rulings were not erroneous, there is no need to conduct a harm analysis.  See
Tex.R.App.P. 44.2(b).





[6] For example, Mrs. Airheart
testified, without objection, that Appellant physically assaulted her prior to
her calling 911.

 





[7] Tex.Penal Code Ann. § 22.05(b)(1)(West 2011).





[8] For comparison, the
indictment in Bell alleged that the
defendant:  “[D]id then and there
knowingly and intentionally use a deadly weapon, to wit:  a firearm, and did then and there threaten
George Smith with imminent bodily injury by the use of said deadly
weapon.”  Bell, 693 S.W.2d at 437.





[9] As the court notes in Miller: 

 

Whereas the indictment in Bell charged the defendant in that case
with committing the offense of aggravated assault by ‘using’ a deadly weapon,
the indictment in appellant’s case charged appellant with committing the offense
by ‘using or exhibiting’ a deadly weapon. 
Thus, proving the offense as alleged in the indictment does not require
proof that appellant ‘used’ a deadly weapon; proof that appellant ‘exhibited’ a
deadly weapon in the commission of the offense would suffice.  The difference is dispositive, as it does
not necessarily follow that the danger of serious bodily injury is established
when a deadly weapon is ‘exhibited’ in the commission of the offense as opposed
to being ‘used.’

 

Miller, 86
S.W.3d at 666-67 [Emphasis added].





[10] Appellant argues that he
objected to the charge, however, the record does not show any objection.  Appellant’s counsel read a proposed charge to
the trial judge and the judge responded “[a]s to your request on voluntary
conduct charge, the Court has included the language, without the application
paragraph.”  No objection to the charge
was made at that time.  The next day,
when the charge was read in its entirety to the jury, Appellant did not
object.  Therefore, Appellant has failed
to preserve error.  Tex.R.App.P. 33(1).  See
Irizarry v. State, 916 S.W. 2d 612, 614-15 (Tex.App.--San Antonio 1996,
pet. ref’d).





[11]
Tex.Penal
Code Ann. §
6.03(c).