

IN THE
TENTH COURT OF APPEALS

No. 10-23-00141-CR
No. 10-23-00142-CR

JOSHUA MICHAEL CARVER,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 443rd District Court
Ellis County, Texas
Trial Court No's. 47691CR and 47525CR

MEMORANDUM OPINION

Joshua Carver appeals from convictions for the offenses of aggravated assault by

threat and unlawful possession of a firearm by a felon.[1] Carver complains that the trial

---

[1] Appellate Cause No. 10-23-00141-CR relates to Carver's conviction for aggravated assault. Appellate Cause No. 10-23-00142-CR relates to Carver's conviction for unlawful possession of a firearm. Carver filed one brief for both appeals; therefore, we will consider them together. Carver's issue one relates to both appeals. Carver's second issue primarily relates to the unlawful possession appeal. Carver's third issue solely relates to the aggravated assault appeal.

court erred by admitting evidence of other offenses he allegedly committed without corroborating evidence, violated his due process rights by sustaining the State's objection during his closing argument, and erred by refusing to include a lesser-included offense in the jury charge.[2]  We affirm the trial court's judgments.

**FACTS**

Because Carver does not challenge the sufficiency of the evidence to support either verdict, we will present only a brief recitation of the facts in the light most favorable to the judgment.  The victim testified that one night, upon pulling into her garage at her residence, she saw Carver, who was her former stepson, standing in the doorway to her house.  She had not seen him for a long time and was unaware that he knew where she lived.  Carver showed her a gun in the waistband of his pants and held a finger up to his mouth in a shushing gesture.  Carver got into the victim's car to talk to her and seemed paranoid.  When the victim asked him how he got into her house, which was locked and had a security alarm, Carver told her that "a thief can always find his way into anything."

Carver and the victim eventually went into the victim's house when he told her that he had beaten up his girlfriend, stolen his girlfriend's car, robbed a convenience store, and intended to shoot his father and flee to Mexico.  The victim stated that she was fearful

---

[2] In his brief to this Court, in the section labeled "Summary of the Argument," Carver asserts that his sentence is unconstitutionally disproportionate to support a sentence of 50 years in prison.  Because Carver was not sentenced to 50 years in prison and that argument is not mentioned anywhere else in the appellant's brief, it appears that it was mistakenly included, and we will disregard that complaint.  If it was Carver's intention to raise that issue on appeal, we find that it is inadequately briefed, and therefore, waived. *See* TEX. R. APP. P. 38.1(i).

because Carver had never liked her and throughout the night kept the gun near him or on his person. She also discovered strange notes Carver had left around the house. Carver had gone through her clothing and was wearing her boyfriend's clothing.

Later that night, an officer knocked on the victim's door while investigating a suspicious car parked in front of the victim's home. The victim testified that Carver pulled the gun out and told the victim to make the officer leave. The victim testified that she answered the door with Carver behind it pointing the gun in her direction so she told the officer she did not know anything about the car. Around midnight that same night, the officer returned after she had determined that the vehicle had been reported as stolen. The victim and Carver were in a back bedroom and Carver prevented the victim from answering the door.

During the time while Carver was at the house, the victim's daughter and son-in-law came to visit. The victim did not tell them anything that was going on and they all drank together. The son-in-law testified that he did not hear any threats by Carver but that Carver did display a firearm and talked about being able to protect himself (Carver). The victim testified that she was fearful for her daughter and son-in-law's safety so she tried to act as though nothing was wrong while they were at her house. The victim's daughter and son-in-law left later that night.

At trial, Carver attempted to establish that he had never actually verbally threatened the victim, and the victim acknowledged that was true but that she felt

threatened by the gun Carver brandished and pointed at her.[3]

The next morning, after loaning Carver a Texas A&M maroon hoodie and a baseball cap, the victim drove Carver to a nearby Walmart store and dropped him off. Later, the victim heard on social media that a car had been stolen from the Starbucks next to the Walmart where she had dropped Carver off and was in a police chase. The victim made a police report as to what had happened to her with a coworker's assistance.

The owner of the stolen vehicle had left it running while she went inside Starbucks and described the person who stole it as being white wearing a black face mask and a burgundy or maroon hoodie, although she admitted that she did not get a good look at the thief. The owner was able to identify Carver in a photo lineup and at trial, although she had not given a description to law enforcement when they arrived at the scene after the theft. A bystander described the thief as a Black male who was wearing a Mississippi State hoodie.

Law enforcement was able to catch up to the vehicle and engaged in a high speed chase before breaking off the chase for safety reasons. The officer who caught up with the car identified the driver as being white or Hispanic based on the color of the skin on the driver's hand he saw on the steering wheel. The officer also testified that the color of Texas A&M (maroon and white) and Mississippi State (burgundy and white) hoodies

---

[3] There were other things that took place that night; however, they are not relevant to the issues in this appeal and Carver does not challenge the sufficiency of the evidence.

would be similar.

Later, the vehicle was located using its OnStar system at a convenience store in another town. It was found by law enforcement with its hood open. The officer who saw the vehicle observed a white male in a maroon hoodie with a baseball cap walking away from the vehicle. The officer stopped the male, who was identified as Carver. The officer discovered a loaded firearm in Carver's pants during a search. The firearm was later determined to be registered to Carver's girlfriend. Carver was arrested for multiple offenses, including the two at issue in this appeal.

## UNCORROBORATED OFFENSES

In his first issue, Carver complains that the trial court erred by allowing testimony of the victim that, after brandishing a firearm, Carver told the victim that he had beaten up his girlfriend, robbed a convenience store, stolen a car, and intended to shoot his father without any corroborating evidence that such crimes had occurred.[4] Carver argues that the admission of this evidence without any other evidence showing that he had, in fact, done those things, was erroneous because the jury could not have found that he committed them beyond a reasonable doubt because a defendant cannot be convicted on the basis of a confession alone.

---

[4] Carver does not complain that the evidence was otherwise inadmissible pursuant to Rules 404(b) or 403 of the Rules of Evidence or any other statute or rule.

The "*corpus delicti* rule is a common law, judicially created, doctrine—the purpose of which was to ensure that a person would not be convicted based solely on his own false confession to a crime that never occurred." *Carrizales v. State*, 414 S.W.3d 737, 740 (Tex. Crim. App. 2013). Under the *corpus delicti* doctrine, a defendant's extrajudicial confession does not constitute legally sufficient evidence of guilt absent independent evidence of the *corpus delicti*. *Miller v. State*, 457 S.W.3d 919, 924 (Tex. Crim. App. 2015). The *corpus delicti* of any criminal offense is that the offense in question has been committed by someone. *Fisher v. State*, 851 S.W.2d 298, 303 (Tex. Crim. App. 1993).

The use of the *corpus delicti* rule as it relates to extraneous offenses is somewhat more complex. "[A] trial court cannot admit extraneous-offense evidence unless a jury could find beyond a reasonable doubt that the defendant committed the extraneous offense." *Inthalangsy v. State*, 634 S.W.3d 749, 757 (Tex. Crim. App. 2021) (*quoting Fischer v. State*, 268 S.W.3d 552, 558 (Tex. Crim. App. 2008)). Additionally, the *corpus delicti* rule has been determined to not apply to evidence of extraneous offenses admitted during the punishment phase of a trial. *Bible v. State*, 162 S.W.3d 234, 246 (Tex. Crim. App. 2005).

In this proceeding, Carver has cited to three cases in support of his argument, none of which concern the use of the *corpus delicti* rule relating to extraneous conduct testimony in the guilt-innocence phase of the trial. *See Mitchell v. State*, 931 S.W.2d 950, 954 (Tex. Crim. App. 1996) (extraneous offense must be proved beyond a reasonable doubt); *Salazar v. State*, 86 S.W.3d 640, 644 (Tex. Crim. App. 2002) (defendant cannot be convicted based

solely on extrajudicial confession); *Turner v. State*, 877 S.W.2d 513, 515 (Tex. App.—Fort Worth 1994, no pet.) (corroborating evidence need only permit a rational finding of guilt beyond a reasonable doubt when considered in conjunction with extrajudicial confession).

The State argues that the evidence that Carver contends is extraneous is not extraneous in fact because the evidence was not offered for its truth to show that Carver committed those alleged crimes, but was offered as proof that Carver intended to threaten the victim, which is an element of the offense of aggravated assault by threat, and it was not necessary to prove that he did commit those offenses beyond a reasonable doubt.

We agree with the State's observation and argument that because the State was not trying to prove the alleged extraneous offenses did in fact occur, the *corpus delicti* rule was inapplicable and thus no corroboration was necessary.[5] The mere making of the statement to the victim is evidence relevant to the issue of whether Carver threatened the victim.

The trial court did not abuse its discretion by admitting the victim's testimony about Carver's statements regarding prior conduct of Carver because the evidence was not admitted as extraneous offense evidence, but was offered as evidence to show that

---

[5] There was some corroboration to Carver's assertion that he had stolen a car prior to arriving at the victim's residence in that the car found outside of the victim's residence was found to have been reported as stolen when the officer sent to investigate looked it up in their system.

Carver intended to threaten the victim.  We overrule issue one.

**DENIAL OF RIGHT TO COUNSEL**

In his second issue, Carver complains that his right to counsel was violated when the trial court sustained an objection by the State to a statement made by his counsel during his closing argument on the guilt-innocence phase of the trial.  Specifically, the objected-to statement was "there was no right, no justification to detain Mr. Carver.  He did not match the description regarding—" and the State objected, stating:  "That is not an issue before this jury."  The trial court sustained the State's objection.

There are four proper areas of jury argument: (1) a summation of the evidence; (2) a reasonable deduction drawn from that evidence; (3) an answer to opposing counsel's argument; and (4) a plea for law enforcement.  *Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020).  We review a trial court's ruling on an objection to jury argument for an abuse of discretion.  *Id*.  A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles.  *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

Although a trial court has broad discretion in controlling the scope of closing argument, it may not prevent defense counsel from making a point essential to the defense.  *Wilson v. State*, 473 S.W.3d 889, 902 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd).  The improper denial of a jury argument may constitute a denial of the right to counsel, assuming the jury argument is one the defendant is entitled to make.  *Davis v.*

*State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010).

The issue of the legality of Carver's detention is a question of law unless there is a disputed fact issue to be determined by the jury as set forth in the jury charge. *See Madden v. State*, 242 S.W.3d 504, 511 (Tex. Crim. App. 2007). Carver did not complain prior to his closing argument that his detention was unlawful, and no issue was included in the jury charge for its determination relating to the lawfulness of his detention. Thus, this argument was not one he was entitled to make under the law. Because of this, he was not denied the right to counsel in his closing argument. We overrule issue two.

**LESSER-INCLUDED OFFENSE**[6]

In his third issue, Carver complains that the trial court erred by not including the lesser-included offense of deadly conduct in the jury charge. Whether a defendant is entitled to a jury instruction on a lesser-included offense involves a two-step analysis. *See Compton v. State*, 666 S.W.3d 685, 716 (Tex. Crim. App. 2023); *Safian v. State*, 543 S.W.3d 216, 219-20 (Tex. Crim. App. 2018). Under the first step, we must decide whether the offense is a lesser-included offense of the offense charged, as defined in Texas Code of Criminal Procedure article 37.09. *See* TEX. CODE CRIM. PROC. art. 37.09; *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998) ("The first step is to apply the relevant definition to the offense charged and the offense in question."). This is a question of law that does not

---

[6] This issue only applies to Carver's conviction for aggravated assault in our Cause No. 10-23-00141-CR, not to the conviction for unlawful possession of a firearm by a felon in Cause No. 10-23-00142-CR.

depend on the evidence produced at trial. *Safian*, 543 S.W.3d at 219-20.

The indictment alleged that Carver intentionally or knowingly "threaten[ed] [the victim] with imminent bodily injury by showing and pointing a firearm at her, and did then and there use or exhibit a deadly weapon, namely a firearm, during the commission of the assault." *See* TEX. PENAL CODE § 22.02(a)(2). "Intentionally" means that it is the defendant's conscious objective or desire to engage in conduct or cause the result. *Id.* at § 6.03(a). A defendant acts "knowingly" with respect to the nature of his conduct or the circumstances surrounding his conduct if he is aware of the nature of his conduct or that the circumstances exist; a defendant acts "knowingly" with respect to the result of his conduct if he is aware that his conduct is reasonably likely to cause the result. *Id*. at § 6.03(b). Deadly conduct requires evidence that Carver recklessly engaged in conduct that placed the victim in imminent danger of serious bodily injury. *See* TEX. PENAL CODE § 22.05(a); *Guzman v. State*, 188 S.W.3d 185, 190-91 (Tex. Crim. App. 2006). "Recklessness" means that "the defendant is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." TEX. PENAL CODE § 6.03(c).

The State concedes in its brief to this Court that deadly conduct is a lesser-included offense to aggravated assault by threat, and therefore, the first step for admission of deadly conduct as a lesser-included offense is satisfied. *See Safian*, 543 S.W.3d at 217, 219-24; *Bell v. State*, 693 S.W.2d 434, 438-39 (Tex. Crim. App. 1985). We agree with the State's

concession.

Under the second step, we must evaluate the evidence to determine whether there is some evidence that would permit a rational jury to find that Carver, if he is guilty, is guilty only of the lesser-included offense. *Safian*, 543 S.W.3d at 220. The evidence must be evaluated in the context of the entire record, and there must be some evidence from which a rational jury could find that Carver was not guilty of the greater offense while convicting him of the lesser-included offense. *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). We may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Bullock v. State*, 509 S.W.3d 921, 925 (Tex. Crim. App. 2016); *Moore*, 969 S.W.2d at 8. Any evidence that Carver is guilty only of the lesser-included offense is sufficient to entitle him to a jury charge on the lesser-included offense. *Moore*, 969 S.W.2d at 8.

For a lesser-included offense instruction to be required, the evidence suggestive of the lesser offense must be more than a jury's disbelief of evidence establishing the greater offense. *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003), *abrogated on other grounds by Grey v. State*, 298 S.W.3d 644 (Tex. Crim. App. 2009). "[T]here must be affirmative evidence to rebut the greater element, and the jury may not simply disbelieve evidence establishing the greater." *Schmidt v. State*, 278 S.W.3d 353, 362 (Tex. Crim. App. 2009); *see also Segundo v. State*, 270 S.W.3d 79, 90-91 (Tex. Crim. App. 2008); *Enriquez v. State*, 21 S.W.3d 277, 278-80 (Tex. Crim. App. 2000); *Hampton*, 109 S.W.3d at 441.

Carver argues that his conduct could have led to a finding that he was only guilty of recklessness in his conduct because there was no evidence that he pointed the gun directly at the victim; the victim agreed that he never verbally threatened her; and Carver's behavior was described as paranoid because he talked about the government following him with drones and attempting to listen to his conversations, left strange notes posted around the victim's house and had gone through the victim's clothes.

The State argues that there was nothing in the record to show that Carver's behavior was only reckless, and disputes Carver's contentions about the evidence he contends shows only recklessness. The record does contain a description by the victim, which, while less than clear, indicates that Carver did point the gun toward the victim when the officer first came to her residence about the vehicle parked at her house. The victim testified that Carver's comments at various times during the night while Carver was holding the gun were threatening to her and made her fearful for her life.

In his two paragraphs of argument on the second step of this issue, Carver does not cite to any authority to support his contention that his conduct could be considered merely reckless so as to explain why the trial court erred by not including the lesser-included offense of deadly conduct. It is not this Court's obligation to make his arguments for him to support his contentions on appeal, and we decline to do so here. *See Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017); TEX. R. APP. P. 38.1(f), (i); *Lucio v. State*, 351 S.W.3d 878, 898 (Tex. Crim. App. 2011). To the degree we can consider

the argument made by Carver, we agree with the State's position that, based on the record and arguments before us, the second step of the analysis has not been met. *See Safian*, 543 S.W.3d at 220. Therefore, Carver was not entitled to the inclusion of the lesser-included offense of deadly conduct. *See, generally, Amaro v. State*, 287 S.W.3d 825, 830-31 (Tex. App.—Waco 2009, pet. ref'd). We overrule issue three.

CONCLUSION

Having found no reversible error, we affirm the judgments of the trial court.


TOM GRAY
Chief Justice


Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith
Affirmed
Opinion delivered and filed October 17, 2024
Do not publish
[CRPM]

